GUIDRY, Judge.
In this suit plaintiff-appellant, Jimmy Harper, seeks to recover judgment for the value of certain tools owned by him which mysteriously disappeared from a job site on which he was working. Brown & Root, Inc., (Brown & Root), Central Louisiana Electric Company, Inc., (CLECO), Burns Electronic Security Services, Inc., and Burns International Security Service, Inc., (both hereafter Burns), are named as defendants. Essentially, plaintiff, in his pleadings, seeks recovery from defendants urging that a contractual relationship of depositor-depositary existed between plaintiff and defendants and that his loss occurred as a result of defendants’ breach of this contract.
Defendants in their answers denied any responsibility for plaintiff’s loss. CLECO, by way of a third party demand sought indemnity over against Brown & Root and Burns as well as court costs, reasonable attorney’s fees and any other expenses incurred by CLECO in the defense of the main demand, its demand for indemnity etc. against Brown & Root and Burns being founded in contract.
The trial court, after trial on the merits, dismissed plaintiff’s suit at his costs but granted judgment in favor of CLECO on its third party demand against Brown & Root, Inc., awarding CLECO attorney’s fees of $1000.00. Plaintiff appealed. Brown & Root appealed from only that portion of the judgment awarding CLECO attorney’s fees. CLECO answered the appeal filed by Brown & Root seeking an increase in the amount awarded as attorney’s fees so as to compensate it for services to be rendered by their attorney on appeal.
The principal issue for determination on this appeal concerns whether or not a depositor-depositary relationship existed between plaintiff and all or any one of the defendants, with the latters’ consequent legal obligation to safeguard plaintiff’s property. The record reflects no genuine dispute with regard to the attendant facts.
Brown & Root contracted with CLECO for the construction of a power plant in Rapides Parish, Louisiana, known as the “Rodemacher Power Plant”. Burns contracted with CLECO to provide security at the construction site. The construction site was completely fenced except as to the boundary thereof which fronted on a lake. Access to and from the construction site was through gates monitored by security personnel. An area very near the entrance gate was provided for the parking of the personal vehicles of the persons working at the construction site. No personal vehicles were allowed inside the area of the construction site and persons working therein were not allowed to take any object out of the area without first receiving a clearance permit from a person in authority with Brown & Root. Surveillance over the construction site was maintained by at least one guard on a twenty-four hour basis, seven days a week.
*1081 Plaintiff was hired by Brown & Root as a mechanic to repair and maintain machinery and like equipment used by Brown & Root on the Rodemaeher job. As a necessary condition of his employment plaintiff was required to furnish his own tools. Employees furnishing their own tools were allowed to take them from the construction site at the end of each work day and/or on weekends however, a clearance permit was required. Likewise, such employees were permitted to leave their tools within the enclosed area of the construction site after' work was completed each day and over the weekends when no work was performed. For those employees who desired to leave their tools within the construction site there were “gang boxes” and sheds available for the storage of such tools however, the space was somewhat limited.
Plaintiff was assigned to work in a five man crew composed of Mr. Bigger, the mechanics foreman, two mechanics, a Mr. Davis and plaintiff, and two mechanics helpers. During the work day the mechanics, their helpers, and the tools were transported to areas within the construction site where work was to be performed by means of a flat-bed truck. At the end of each work day none of the mechanics removed their tools from the construction site nor were these tools placed in a “gang box” or shed. Rather, the mechanics’ tools were left on the bed of the truck and this vehicle was parked within the construction site some thirty to fifty yards from the guard shack. On the morning of August 1,1978, a Monday, plaintiff reported for work and discovered that all of his tools, contained in two locked boxes which together weighed approximately 175 pounds, were missing. The tools belonging to Mr. Bigger and Mr. Davis were untouched. Plaintiff made demand upon Brown & Root for a return of his tools or their value. Brown & Root disclaimed any responsibility for the loss and this suit followed.
On the basis of the above facts plaintiff asserts that there was a deposit relationship existing- between plaintiff and defendant, Brown & Root, as regards plaintiff’s tools; Brown & Root received an economic advantage from the deposit relationship and must be considered a compensated depositary; having failed to exonerate itself from fault Brown & Root should be cast in judgment for the value of plaintiff’s tools; and, the trial court erred in holding otherwise.[1]
In Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La. 1973) our Supreme Court discussed the legal principles applicable to the contract of deposit and there stated:

“Civil Code Article 2926 provides: ‘A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind.’ The deposit is essentially gratuitous, although compensation may be given. Article -2929. Our jurisprudence treats a compensated depositary as one against whom the obligation of preserving the property is under Article 2938 rigorously enforced. United States Fidelity & Guaranty Co. v. Dixie Parking Service, 262 La. 45, 262 So.2d 365 (1972). See Notes, 25 Tul.L.Rev. 268 (1951) and 12 Tul.L.Rev. 458 (1938).

The deposit is perfected by the delivery of the thing deposited. Article 2930. The voluntary deposit takes place by the mutual consent of the depositor and the depositary. Article 2932. ‘Consent is implied when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it.’ Article 2933.

The depositary must use the same diligence in preserving the property that he uses for his own. Article 2937. He is not answerable for the accidental loss or for deterioration not effected by his act. Articles 2939, 2945. However, once the existence of the deposit is established and loss of or damage to the property while 
*1082
deposited, a presumption is raised that the loss resulted from lack of due care on the depositary’s part, and the burden is then on the depositary to exonerate himself from fault. Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70 (1970); Alex W. Rothschild & Co. v. Lynch, 157 La. 849, 103 So. 188 (1925). (As earlier noted, the obligations of safekeeping are more rigorously enforced against a compensated depositary).

[[Image here]]

For a deposit, the delivery is made ■when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it.’ Article 2933. . . .

However, for the delivery of the object to another to constitute a deposit, there must also be mutual intent, expressed or implied, Articles 2932, 2933, that by the act of accepting it the person who receives it has bound himself to safeguard it. Article 2926. See United States F. & G. Co. v. Dixie Parking Serv. Inc., 262 La. 45, 262 So.2d 365 (1972).”

Considering the facts and circumstances of this case in light of these settled principles we determine that the trial court correctly concluded that no deposit relationship existed between plaintiff and Brown & Root. The very basic essentials for the formation of a contract of deposit, i. e., delivery and receipt, are lacking. There was clearly no delivery by plaintiff of his tools into the custody, control, or care of Brown & Root. Although plaintiff’s tools were taken onto the construction site as a necessary condition of his employment these movable items remained constantly in his possession and subject to his sole control. Plaintiff was free to take his tools with him whenever he left the construction site or he was free to leave them at the site in a “gang box”, shed or at whatever location he chose within the site. It can hardly be said that because Brown & Root provided “gang boxes”, sheds for storage, and 24 hour surveillance it thereby impliedly agreed to receive delivery of the personal effects of their employees which the latter chose to leave within the site with the consequent duty of safeguarding same.
The sole issue remaining concerns correctness of the trial court judgment against Brown & Root awarding attorney’s fees to CLECO and whether the fees so awarded should be increased for services rendered on appeal.
The contract between CLECO and Brown & Root provides in pertinent part as follows:

“21. INDEMNITY BY CONTRACTOR AND LIABILITY INSURANCE:

Contractor shall defend and indemnify and save Purchaser and the Consulting Engineers harmless from any and all claims, losses, damages, costs and expenses, including attorney’s fees, arising or alleged to arise from personal injuries, including death, or damage to property, including the loss of use thereof, and resulting from, arising out of or in connection with the WORK or alleged to result from or arise out of or in connection with the WORK, including, without limitation, all liability imposed by virtue of any law designed to protect persons employed at the WORK site.”

Brown. & Root argues that since the quoted indemnity provision does not purport to indemnify CLECO against losses resulting from its own negligence and since CLECO was made a party to this suit based on its own alleged negligence it was error to award CLECO a judgment for attorney’s fees. We cannot agree.
We concede that absent an express provision indemnifying an indemnitee against losses resulting from his own negligence indemnification will not .be allowed if the cause of injury or loss sustained is shown to result from the indemnitee’s own negligent act of commission or omission. Polozola v. Garlock, Inc., 343 So.2d 1000 (La. 1977). We likewise concede that the contract of indemnity in this case did not- contain a provision indemnifying CLECO against losses resulting through its own negligent acts. However, even assuming arguendo *1083 that the allegations of plaintiff’s petition indicate that CLECO was joined as a party defendant solely on the basis of it's own alleged negligence this circumstance does not deprive CLECO of its contractual right of indemnity if it is otherwise shown to be entitled thereto. In matters of indemnity the allegations of a claimant’s pleadings, as to the cause of injury, are not determinative of an indemnitee’s right to indemnification. Rather, whether or not indemnification should be allowed can be determined only after liability is fixed.
In the instant case, after the matter was fully tried on its merits, plaintiff conceded that his claim against CLECO was without merit and should be dismissed. On appeal plaintiff-appellant has specified no error in the trial court’s dismissal of his claim against CLECO. This fact, i. e., the dismissal of plaintiff’s claim against CLECO, not the allegations of plaintiff’s pleadings, is determinative of CLECO’s rights under the contract of indemnity.
The indemnification clause in the contract between CLECO and Brown & Root is clear and unequivocal. The latter agreed to indemnify the former from any and all claims, losses, damages, costs and expenses, including attorney’s fees, arising or alleged to arise from damage to property, and resulting from, arising out of or in connection with the work. This is such a claim and CLECO is clearly entitled to recover the attorney’s fees expended by it in defense thereof. We likewise find merit in CLECO’s answer to the appeal wherein it requests an increase in the amount awarded so as to compensate for the services rendered by their attorney on appeal. In this regard we consider an additional award in the amount of $500.00 to be adequate.
For the above and foregoing reasons the judgment appealed from is amended so as to increase the amount of attorney’s fees which Brown & Root is condemned to pay to CLECO to the sum of $1500.00 and in all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.

. Plaintiff does not specify any error in the trial court’s dismissal of his action as against CLE-CO and Burns and in fact conceded at the trial level that his suit against these parties should be dismissed.