LOTTINGER, Judge.
This truck-train collision suit was brought by Robert Rodriguez against Illinois Central Gulf Railroad Company (ICG) for $5,750.00 in damages incurred when the defendant’s train struck a log truck driven by the plaintiff’s employee. ICG filed a third party demand against International Paper Company seeking attorney’s fees and indemnity or contribution under the terms of a 1972 trackage agreement between the paper company and the railroad. From a trial court judgment holding the railroad liable for $4,500.00 in damages and dismissing the railroad’s claim against the paper company, ICG perfected this suspensive appeal.
Though requested to do so by ICG, the trial court gave no written reasons for its judgment. The primary issue on the principal demand on appeal is whether the trial court erred in concluding that ICG’s negligence was solely responsible for the plaintiff’s damage. ICG also contends that the trial court erred in failing to award indemnity and attorney’s fees against the paper company.
On June 1,1977, at a private grade crossing located at the International Paper Company wood yard near Roseland, Louisiana, a tractor-trailer log truck driven by Leroy Stevenson, employee of plaintiff, was westbound attempting to exit the paper company wood yard. The weather was clear, the sun was shining and the temperature was hot. The ICG train was heading south on the southbound mainline track, one of four railroad tracks in the immediate vicinity of the paper company wood yard. The southbound mainline track is the westernmost of the four tracks. Paralleling it to the east is the northbound mainline track, an eastern siding track and the International Paper Company spur track. Heading west, Stevenson had crossed the other three tracks before crossing the southbound mainline track. Stevenson apparently did not see or hear the train, which was traveling at about 40 to 45 miles per hour. He pulled out onto the southbound track and his trailer was struck by the oncoming train as soon as the cab had cleared the tracks.
Plaintiff’s main contention on appeal is that his employee could not and did not see the oncoming train until he was on the track because idle box cars or flat cars obstructed the view of the train. Stevenson testified that he did not hear the train’s whistle until the train was only 200 feet away from him. He said he did not have time to back up so he tried to get across the track. Prior to trial, Stevenson told an insurance agent investigating the accident for the railroad that he first heard the whistle blowing when the train was 800 to 900 feet away. However, he reiterated on cross exam at trial that the train was only 200 feet away when he first heard the whistle.
The train engineer, conductor and brakeman all testified that the train bell and horn were turned on some 1,200 to 1,300 feet from the crossing. They spotted the truck when the train was about 900 to 1,000 feet from the crossing. Contrary to Stevenson’s testimony, all three crewmen on the train testified that there were no railroad cars impeding the view of the truck driver. However, the truck driver’s view may have been impeded, they said, because the passenger window on the truck, which was the window facing the oncoming train, was rolled up and somewhat covered with mud.
Photographs taken at the scene some 30 to 45 minutes after the accident were introduced by the defendant into evidence. These photographs show clearly and beyond doubt that there was no obstruction to the view of the truck driver before he crossed the track of the oncoming train. The photographs reveal that the truck driver could have easily seen the train had he been attentive. The preponderance of the testimony shows that there was no movement of any cars from the railroad tracks between the time of the accident and the time the photographs were taken, indicating that the *1371 photographs depicted the scene as it existed at the time of the accident. However, there was some scant testimony by plaintiff’s witnesses to the effect that some railroad cars were moved after the accident but before the pictures were taken. Stevenson’s testimony was that the cars blocking his view were located on the wood yard spur line. Thus, if there was any movement of cars between the time of the accident and the time the pictures were taken, the movement would have occurred on the spur track and not on any of the other three tracks, which the testimony shows were free of railroad cars at the time of the accident. Therefore, even if plaintiff’s view were blocked by railroad cars on the spur track, his view became unobstructed by the time he crossed the eastern siding track.
Since the trial judge rendered judgment in favor of plaintiff, he must have found that the train crew breached a duty and that the truck driver was not contributorily negligent. We conclude that because of the conflict in the testimony between plaintiff’s witnesses and the train crew as to when the whistle and bell were sounded, the trial judge was not in error in finding a breach of duty.
However, a close reading of the record and the testimony, and particularly a review of the photographs introduced by the defendant, convinces us that the trial court erred manifestly when he failed to hold that the plaintiff was contributorily negligent. Had Stevenson been even somewhat attentive he easily could have seen the train and probably could have heard the bell and whistle before he attempted to cross the southbound mainline track. As we noted above, even if we concede that there were box cars or flat cars on the spur track, those cars would in no way have obstructed Stevenson’s view after he crossed the spur line track. The record shows there is a distance of some 61 feet between the western edge of the spur line and the eastern edge of the southbound mainline track, which is more than sufficient to have given Stevenson time to notice the oncoming train had he been attentive. A motorist approaching a railroad crossing is charged with the responsibility of seeing and hearing what he could have seen and heard. Theriot v. Texas and N.O.R. Co., 220 So.2d 563 (La.App. 4th Cir. 1969) writ refused, 254 La. 142, 222 So.2d 886 (1969); McCray v. Illinois Cent. R.R. Co., 244 So.2d 877 (La.App. 1st Cir. 1971). See La.R.S. 32:171(A)(4) and La.R.S. 45:563. The contributory negligence of plaintiff’s employee is a bar to plaintiff’s recovery in this case. The trial court’s decision casting ICG liable for the damages is therefore reversed.
THIRD PARTY DEMAND
In its third party demand, ICG contends that under the terms of a May, 1972 track-age agreement the paper company agreed to hold the railroad harmless and to indemnify the railroad company for damages and attorney’s fees for any injury or property damage which occurred at the crossing and which was not caused by the sole fault of the railroad. The trackage agreement was apparently an arms length transaction between two business entities. In return for allowing the paper company to establish a crossing at this particular location, the railroad required that the paper company agree to hold it harmless and to indemnify it for any accidents which might arise at the crossing, provided that they were not solely caused by the fault of the railroad. It is certainly understandable that a railroad would seek such a hold harmless and indemnity agreement because the addition of a new crossing on the tracks increases the likelihood of an accident occurring thereon.
The paper company contends that the hold harmless and indemnity agreement is only operable when there is some negligence attributable to the paper company. We do not read the trackage agreement this way. Under the specific terms of the agreement, the only time the paper compa *1372 ny will be relieved under the hold harmless and indemnity clause is when the accident is caused solely by the negligence of the railroad. As we found above, the railroad was not solely at fault for the accident in this case because the plaintiff substantially contributed to the damage which occurred. The paper company will therefore bear the costs of the railroad’s defense in this case, which the record shows was $1,750.00.
Therefore, for the above and foregoing reasons, the decision of the trial court on the principal demand is reversed and ICG is absolved from liability to the plaintiff. On the third party demand, International Paper Company is cast in the amount of $1,750.00 for ICG’s attorney’s fees.
REVERSED AND RENDERED.