Paul J. WALLER

v.

CHEVRON, USA, INC.

Civ. A. No. 84–620–A.

United States District Court,
M.D. Louisiana.

March 17, 1986.

Sumpter B. Davis, III, Baton Rouge, La., for plaintiff.

Helen Scott Johnson, Jeansonne & Briney, Lafayette, La., for intervenor Maryland Cas. Co.

Kennedy J. Gilly, Jr., Patrick A. Talley, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendants.

Edward J. Marquet, Juneau, Hill, Judice, Marquet, Hill & Adley, Lafayette, La., for third-party defendant Maryland Cas. Co.

Donald J. Anzelmo, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for third-party defendant Pacific Employers Ins. Co.

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by third party defendant, Maryland Casualty Company, to dismiss or alternatively for summary judgment. The court will consider the matter as a motion for summary judgment since matters outside the pleadings have been considered. The motion is opposed.

Federal jurisdiction is alleged under 28 U.S.C. § 1332 and under 28 U.S.C. § 1333.

Plaintiff's complaint against Chevron alleges Chevron's negligence and strict liability under La.-C.C. art. 2317 for an accident which occurred on a Chevron drilling platform in the outer continental shelf. Plaintiff was employed by Engineered Mechanical Services, Inc. (EMS), and Maryland Casualty insured EMS. EMS was a contractor for Chevron and the contract contains the following indemnity clause:

Contractor agrees to defend and hold Company indemnified and harmless from and against any loss, expense, claim or demand for:

(a) Injury to or death of Contractor's employees or for damage to or loss of Contractor's property in any way arising out of or connected with the performance by Contractor of services hereunder; and

(b) Injury to, or death of third persons or the employees of Company, or for damage to or loss of property of Company or of third persons, in any way arising out of or connected with the performance by Contractor of services hereunder, unless caused solely by the negligence of Company; provided that if such injury, death, damage or loss is caused by the joint or concurrent negligence of Contractor and Company, each shall be liable for one-half of the loss, expense, claim, or demand resulting therefrom.

Company shall have the right, at its option, to participate in the defense of any

such suit without relieving Contractor of any obligation hereunder.

Chevron, citing the above quoted provision of the contract filed a third party demand against EMS and Maryland Casualty, although the proceedings against EMS have been stayed by reason of an automatic stay from the bankruptcy court.

Maryland Casualty argues that the Louisiana Oil Field Anti-Indemnity Act, LSA–R.S. 9:2780, renders the indemnity agreement between its insured, EMS, and Chevron null and void. It is indeed correct that the law of Louisiana, as the adjacent state, applies to this outer continental shelf accident under the Outer Continental Shelf Act, 43 U.S.C. § 1333(a)(2)(A). It is not correct that the Anti-Indemnity Act nullifies this contract. The statute prohibits indemnity only for the sole or joint fault of the indemnitee. To the extent that the contract might be construed to provide indemnity for joint negligence the Act would apply. Beyond that, however, the Anti-Indemnity Act has no application to this contract since the contract provides indemnity to Chevron only if it is without fault.

Next, Maryland Casualty points out that Waller's complaint alleges that Chevron's fault (negligence and strict liability under art. 2317) was the cause of his injuries and recites the hoary shibboleth found in many insurance cases, "under Louisiana law, the duty to defend is determined by the allegations of the petition." Thus, says Maryland Casualty, because the complaint alleges Chevron's fault, it has no duty to defend Chevron and, after trial upon the merits, if Chevron is found faultless, Maryland Casualty has no obligation to indemnify Chevron for the cost of its successful defense.

As will be demonstrated, that argument stands the law of indemnity upon its head. Such a declaration overlooks the vast difference between a policy of liability insurance (one type of indemnity) which provides indemnity for the *fault of the insured* and a contract of indemnity, such as this, which provides indemnity only where the indemnitee *is not at fault*.

Every liability insurance policy contains a provision obligating the insurance company to provide a defense even if the claims made against the insured are untrue, as well as an obligation to indemnify if the insured is liable (at fault). It is not the allegations of the insured's fault which is the focus of the inquiry, however. It goes without saying that fault is alleged in every tort action. The untrue allegations in the complaint do not deprive the insurance company of anything or require it to do anything it has not contracted to do. Every liability policy also contains exclusions and other provisions which negate the coverage of the policy. It is, therefore, appropriate in a case involving a policy of liability insurance to look to the allegations of the petition and to the provisions of the policy to determine whether there is an obligation to defend the insured. A determination can be made *on the merits* as to the coverage of the policy, since it will be presented to the court and the court may analyze its provisions and determine coverage according to the claims made in the complaint. Since the insurance company has already agreed that it will defend the insured even if the claims are untrue, the courts properly assume the truthfulness of the allegations of the petition and if, under those allegations there would be (1) coverage, i.e., no applicable exclusion and (2) liability, i.e., the insured is *at fault*, there is no obligation to defend. *See, e.g., American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969) (false allegation that driver of vehicle had consent of owner required insurance company to defend). The insurance company, having contracted to defend untrue and incorrect suits, and having charged a premium which no doubt provides for the cost of defending such suits, is simply required to honor its contractual obligation to defend. The insurance company's obligation to *indemnify*, however, must await a determination of the fault of the insured, although the fault of the insured will of necessity be alleged in every case.

Upon reflection, one will recognize that no situation (excepting judicial error) could arise which would require a liability insurance company to do anything which it has not contracted to do or relieve it of an unperformed contractual obligation. If the plaintiff alleges facts which bring the case within the coverage of the policy, (remember, fault will always be alleged) the insurance company must defend without regard to whether the insured is actually at fault. Why? Because the company agreed in writing to "defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of the policy, even if any of the allegations of the suit are *groundless, false or fraudulent." American Home supra,* at 259. If the allegations, assumed to be true, do not bring the claim within the coverage of the policy, then the company has no duty to defend regardless of the actual fault of the insured. If the claim is not one of the risks insured against, the fault of the insured is irrelevant to the inquiry, for every policy insures only specified risks, not the universal fault of the insured. *See, e.g., West Bros. of DeRidder, La., Inc. v. Morgan Roofing Co., Inc.,* 376 So.2d 345 (La.App. 3d Cir.1979) (Comprehensive general liability policy with "completed operation hazards" and "products hazards" exclusions afforded no coverage to roofing contractor for suit by owner alleging defective roofing, hence no duty to defend). A final determination on the merits of the duty to defend can be made in every case involving a liability insurance policy, without doing violence to the contractual obligations of the parties. How different is the case in the contract before this court.

Contrary to the situation in liability insurance cases, Chevron in this case is entitled to indemnity only if it is *not at fault.* To allow the allegations of fault in the complaint to deprive it of indemnity even if it is faultless, effectively destroys the contract of indemnity—eliminates it entirely from Louisiana contract law.

The indemnitee in such a contract has no occasion to invoke the indemnity agreement unless a claim of some sort is made against it. There will inevitably be allegations of the indemnitee's fault. How else can one bring a tort action?

Upon reflection one can see that under Maryland Casualty's argument, the indemnitee can *never* enforce its contractual right of indemnity if indemnity depends upon the absence of fault. When a tort action is filed alleging fault (and they all, of necessity, must so allege) the indemnitee's fault or lack of fault can only be determined by a trial upon the merits. It is the absence of fault which triggers the indemnity obligation. Under a liability insurance policy, as we have seen, the fault of the insured (which will always be alleged in a tort suit) is irrelevant to the obligation to defend, because the obligation to defend is determined by the coverage of the policy compared to the allegations of the complaint and the company has agreed to defend false claims.

In the case of indemnity, it is the absence of fault of the indemnitee which is the essence of the agreement. Unless the indemnitee can demand indemnity for the cost of establishing its freedom from fault, *it can never enforce its agreement.* All plaintiffs will always allege the fault of the indemnitee (otherwise they would not be in court). To allow mere allegations of fault made by a third party to vitiate an otherwise perfectly valid agreement violates the contract, logic and common sense.

For these reasons, the courts of Louisiana hold that enforcement of indemnity agreements (including those contained in liability insurance policies) must await the final determination of fault.

In *Harper v. Brown & Root, Inc.,* 383 So.2d 1079 (La.App. 3d Cir.1980) writ granted on other grounds, 389 So.2d 1129, reversed on other grounds, 391 So.2d 1170, on remand 398 So.2d 94, plaintiff sued his employer, Brown & Root and Central Louisiana Electric Company, Inc. (CLECO) for damages for the loss of personal tools which were stolen at the job site, alleging the fault of both Brown & Root and CLE-

CO. CLECO filed a third party demand against Brown & Root under its indemnity agreement which provided indemnity only if CLECO was not at fault. The trial judge determined that CLECO was faultless and the indemnity agreement was enforced— judgment in CLECO's favor on the third party demand for cost of defense. The trial court also found in favor of Brown & Root on the merits. Plaintiff appealed and Brown & Root appealed the judgment on the third party demand. Brown & Root made the same argument to the Court of Appeal which Maryland Casualty makes here. "... Since CLECO was made a party to this suit based on its own alleged negligence, it was error to award CLECO a judgment for attorney's fees." *Id.* at 1082. In rejecting this upside down proposition, the Court of Appeal held:

> ... assuming arguendo that the allegations of plaintiff's petition indicate that CLECO was joined as a party defendant solely on the basis of its own alleged negligence this circumstance does not deprive CLECO of its contractual right of indemnity if it is otherwise shown to be entitled thereto. In matters of indemnity the allegations of a claimant's pleadings, as to the cause of injury, are not determinative of an indemnitee's right to indemnification. *Rather, whether or not indemnification should be allowed can be determined only after liability is fixed.* (383 So.2d at 1083; emphasis supplied)

The Court of Appeal thereupon increased the award to cover attorney's fees on appeal. Brown & Root was ultimately held liable, on remand, to the plaintiff, but it is significant that Brown & Root applied for writs from the judgment on the third party demand awarding indemnity to CLECO and that the Supreme Court denied that application. 389 So.2d 1129 (case 2).

In *Rodriguez v. Illinois Central Gulf Railroad Co.,* 395 So.2d 1369 (La.App. 1st Cir.1981), plaintiff was injured in a train-vehicle accident which occurred on a spur line on the property of International Paper Company. The defendant railroad filed a third party demand against the paper company claiming indemnity under a contract which provided for indemnity for any injury or property damage which occurred at the crossing not caused by the sole fault of the railroad. Although the plaintiff alleged that the accident was the sole fault of the railroad the court found, after trial upon the merits, that plaintiff was guilty of contributory negligence. Thus, there was no recovery for the plaintiff, but the court enforced the indemnity agreement and the paper company was required to pay the cost of the railroad's defense. Although Maryland Casualty's argument was apparently not presented to the court in that case, the case illustrates the correct handling of such an indemnity claim.

*Livings v. Service Truck Lines of Texas, Inc.,* 467 So.2d 595 (La.App. 3d Cir.1985) did squarely address the issue before this court and reversed a summary judgment in favor of the indemnitor, noting, "... the issue of [the indemnitee's] negligence or fault must be fully explored before a determination can be made concerning the validity of the ... contract insofar as it purports to obligate [the indemnitor] to provide a defense..." *Id.* at 599.

Two Louisiana cases are offered to the court as supporting Maryland Casualty's position. In *Pearson v. Hartford Accident & Indemnity Co.,* 345 So.2d 123 (La.App. 1st Cir.1977), the court did employ language indicating that indemnity would not be enforced because plaintiff's petition alleged the negligence of the indemnitee, *id.* at 125. The statement constitutes obiter dictum, however, since the court specifically found that *the indemnitee was at fault,* thus, negating indemnity.

*Sullivan v. Hooker Chemical Co.,* 370 So.2d 672 (La.App. 4th Cir.1979) did indeed hold that plaintiff's allegations of negligence had the effect of cancelling the indemnitee's contractual duty to pay the cost of defense of a faultless indemnitee.

The *Sullivan* decision was rendered without the benefit of the later Louisiana decisions cited above, none of which support the conclusion of the *Sullivan* court. *Harper, Rodriguez,* and *Livings* represent

ample Louisiana jurisprudence to conclude that the Supreme Court of Louisiana would not accept the topsy-turvy notion which is advanced by Maryland Casualty that the enforcement of a perfectly valid indemnity agreement depends upon allegations which are made by a third party in a tort suit.

The very statement of the proposition reveals its lack of merit. Acceptance of Maryland Casualty's proposition would represent a judicial fiat precluding every indemnity agreement which depends upon the absence of fault by the indemnitee. Surely the Supreme Court of Louisiana would not accept an argument so lacking in reason and common sense, as indicated by its denial of writs in the *Harper* case on that precise point.

This case represents precisely the type of case for which Rule 14, Fed.R.Civ.P., was invented. Rule 14 authorizes any defendant to assert a complaint against a third party "who is *or may be* liable to him." Rule 14 represents a modern step forward—a procedure for determination in one proceeding of all the claims arising out of a particular situation. Chevron claims that Maryland Casualty "may be liable" to it if it is not at fault. To say, as Maryland Casualty's argument would require, that the allegations of the plaintiff, even if proved untrue, bind the defendant and deprive him of his Rule 14 right to file a third party complaint, is absurd.

In this case, the contract obligates Maryland Casualty to defend Chevron if Chevron is without fault. The contract also requires Maryland Casualty to indemnify Chevron if it is without fault, for any cost or expense it incurs. If Maryland Casualty, because of the allegations in plaintiff's complaint, or because it independently concludes that Chevron is at fault, declines to furnish a defense, it may await the determination of Chevron's fault by a trial upon the merits. But if trial establishes that despite the false allegations of the complaint Chevron was not at fault, then Maryland Casualty did have the obligation to defend and since it failed to do so it must pay the costs of Chevron's successful defense.

Maryland Casualty proffers three recent Fifth Circuit cases as supporting its novel argument, *Sullen v. Missouri Pacific Railroad Co.*, 750 F.2d 428 (5th Cir.1985), *Knapp v. Chevron, USA, Inc.*, 781 F.2d 1123 (5th Cir.1986) and *Doucet v. Gulf Oil Corp.*, 783 F.2d 518 (5th Cir.1986).

The United States Court of Appeals for the Fifth Circuit is a great court, made up entirely of wise, sagacious and scholarly judges. Those cases simply cannot stand for the proposition advanced by Maryland Casualty Company because that court would never accept such a bizarre notion. Moreover, those decisions were rendered without consideration of the *Harper* and *Rodriguez* cases and in two of them, without consideration of the *Livings* decision as well.

Accordingly, the motion for summary judgment on behalf of Maryland Casualty will be denied, unless the Louisiana courts or the Fifth Circuit, make it absolutely clear that Louisiana law requires an indemnitee to be deprived of his otherwise valid contractual right of indemnity because of untrue allegations in a third party's pleadings.