370 So.2d 672 (1979)
Tom SULLIVAN
v.
HOOKER CHEMICAL COMPANY et al.
No. 10127.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
*673 Badeaux, Discon, Cumberland & Barbier, J. Michael Cumberland, New Orleans, for plaintiff-appellant.
Normann & Normann, Russell M. Cornelius, New Orleans, for defendant-appellee Hooker Chemical Co.
Hammett, Leake, Hammett, Hulse & Nelson, Dominic J. Gianna, New Orleans, for defendant-appellee George Moran.
Donovan & Lawler, Christopher E. Lawler, Metairie, for defendant-appellee Atlas Erection Co.
*674 Drury & Lozes, James H. Drury and Steven M. Lozes, New Orleans, for defendant-appellee Giambelluca Const. Co.
Before LEMMON, GULOTTA and STOULIG, JJ.
LEMMON, Judge.
In this automobile accident case plaintiff has appealed from a judgment dismissing his tort suit on the basis of contributory negligence. The principal issues on appeal involve determinations of the reasonableness of the conduct of plaintiff and all defendants under the circumstances shown.
Facts
Plaintiff, an ironworker employed by Atlas Erection Company, was injured in a vehicular collision inside of the Hooker Chemical Company industrial plant. On the day of the accident there were seven Atlas employees working at the construction site on the plant. After completing their work for the day, plaintiff and two co-employees, as was their usual custom, climbed onto the rear bumper platform of the first of two company pickup trucks that were traveling to the parking lot, which was about one-fourth mile from their work area. The truck, driven by plaintiff's foreman, proceeded a short distance and then executed a 90° left turn onto the shell road that led to the parking lot. Prior to executing the turn, the driver's view of the exit road had been obstructed by a building on the corner, and when the driver made the turn he saw a piece of heavy machinery excavating a ditch across the road ahead. The driver thereupon brought the truck to a gradual stop about 50 to 75 feet beyond the turn and about 60 to 70 yards before the excavation.[1] As he looked to the rear preparatory to backing up, the second company truck, driven by defendant George Moran, struck the rear of the truck on which plaintiff was riding.
Plaintiff filed this suit against Moran and also joined Hooker and its contractor, Giambelluca Construction Company, alleging that the latter in performing the excavation had negligently failed to provide warnings at the blind corner where both vehicles had executed the left turn.
After trial on the merits the court found that Moran was the only negligent defendant, but that plaintiff's recovery against Moran was barred by his contributory negligence. The court also denied Hooker's third party demand against Atlas for the amount of attorney's fees it incurred after the latter refused to provide a defense.
Moran's Liability
Under the evidence most consistent with the trial court's factual findings, Moran ran into the rear of a vehicle which had braked to a gradual stop at a point 50 to 75 feet after the turn at the blind corner. At his estimated speed of five miles per hour (seven feet per second) Moran traveled from 7 to 11 seconds after he turned the corner and before impact. These circumstances support the trial court's finding that Moran was negligent in following too closely and in not keeping a proper lookout.
Negligence of Hooker and Giambelluca
Plaintiff (and Moran by third party demand) asserts that Giambelluca was negligent in failing to provide warning of its excavation to motorists turning the blind corner and that Hooker was liable for the hazardous condition thus existing on its premises and for its negligence in failing to supervise the contractor's operations.
The evidence most favorable to Giambelluca established that the plainly visible heavy equipment was in the process of excavating across the roadway at a point between 77 and 95 yards from the point where the trucks executed the blind turn onto the road leading to the parking lot. Furthermore, the speed limit on the Hooker plant was ten miles per hour. Under these overall circumstances there was no duty on Giambelluca or Hooker to warn of the excavation *675 work in progress, since a motorist exercising ordinary care had ample stopping room after observing the excavation.
Plaintiff contends, however, that the absence of a warning before the turn necessitated a stop by a vehicle after making the turn and thus caused the creation of a hazardous obstruction in the roadway for following vehicles.
Whatever the merits of that argument would be if the collision had occurred immediately after the turn, the collision in this case occurred some 50 to 75 feet beyond the turn, at which point the stopped vehicle did not constitute a hazardous obstruction to following motorists. Accordingly, any failure by Giambelluca to provide warnings did not create a hazard which caused this accident.
The demands by plaintiff and Moran against both of these defendants were properly dismissed.
Plaintiff's Contributory Negligence
Defendants contend plaintiff was contributorily negligent in riding on the rear bumper of the truck, when he could have ridden in the bed or the cab of either truck.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, 276 So.2d 286 (La.1973). Arguably it was not unreasonable for plaintiff to ride on an eight-inch wide bumper, with a handhold on an overhead pipe rack, for a short distance in an industrial plant with a minimal amount of vehicular traffic limited to low speeds. Nevertheless, if any duty of reasonable self care was violated by riding on the wide bumper, the duty not to ride on the bumper perhaps encompasses the risk of falling off the truck, but does not encompass the risk that a motorist in another vehicle will drive so carelessly as to run into the back of the truck on which plaintiff was riding. Brantley v. Brown, 277 So.2d 141 (La.1973). Any duty not to ride on the rear bumper of a truck was simply not designed to protect against the risk encountered here.[2]
The trial court recognized "that a person riding on the rear bumper of a truck assumes only such risks as are incidental to his position and that he does not assume the risk of . . . the negligent driving of another vehicle".[3] However, noting that plaintiff did not see or hear the Moran vehicle until the collision, the court held plaintiff contributorily negligent for not maintaining a lookout to the rear while riding in that position and for failing to utilize the time between the stop and the collision to remove himself from danger.
The burden of proving contributory negligence is on the party alleging the defense. Here, there were no circumstances shown which would give plaintiff any reason to anticipate negligent driving by Moran so as to require a lookout to the rear. Additionally, there is no indication that plaintiff had any meaningful opportunity to remove himself from danger after his truck stopped or that there was a clear method by which he could do so, even if he had been cognizant of Moran's negligent driving and had had several additional seconds.
*676 The law and the evidence in this case does not support a finding of contributory negligence.
Damages
Plaintiff, who was 58 years old at the time of the December, 1972 accident, sustained a comminuted fracture of the tibia, above the ankle. After a normal course of treatment by an orthopedic surgeon, plaintiff was discharged and returned to work as an ironworker in July, 1973, about eight months after the accident.
In April, 1975 plaintiff returned to the orthopedist with complaints of swelling after long periods of standing and of ulcers above his ankle. The doctor found no significant orthopedic problems and referred plaintiff to the clinic's dermatology department.[4]
The dermatologist diagnosed a stasis ulcer (one caused by poor venous return). Based on the history of a crushing injury to the area and the absence of indication of varicose veins, the doctor opined that the ulcer was causally related to the 1972 injury.
Plaintiff was treated with antibiotic cream and dressings. By September the ulcer was healed, and the doctor discharged plaintiff with instructions to wear supportive dressings to prevent swelling. The doctor further advised plaintiff to seek work which did not require constant standing and in which he could elevate his feet about twice a day for an hour, if possible.
Plaintiff suffered a recurrence of the ulcer in October, 1977, but did not return to the doctor after two visits that month. On April 10, 1978, the day of the doctor's deposition for use at trial, he called plaintiff to inquire as to his current condition and was told that a small ulcer had just appeared.
As to permanency of the condition, the dermatologist stated that such ulcers are recurrent and are controlled by wrapping to keep down swelling. The vascular surgeon added that the likelihood of improvement is good for a venous ulcer (which the dermatologist had diagnosed), but poor for an arterial ulcer, noting that his definitive diagnosis had not been completed because of plaintiff's cancelling of the testing.
The medical expenses (paid by the workmen's compensation insurer, who intervened in these proceedings) were stipulated at $2,887.40. The only evidence as to plaintiff's earnings were a statement that iron workers earned about $7.20 per hour in 1972 and $10.47 in 1978 and that plaintiff had been in that trade about 25 years.
Plaintiff had returned to work with Atlas after his discharge by the orthopedist in July, 1973. However, when he was advised by the dermatologist in mid-1975 to seek other employment which did not require prolonged standing, he quit his job with Atlas, and worked only for one brief period thereafter until the April, 1978 trial.
On the overall evidence we set the award for pain and suffering, medical expenses, loss of wages for eight months, and permanent impairment of earning capacity resulting from recurrent ulcers upon standing for long periods at $35,000.00.
Hooker's Third Party Demand
When joined as a defendant, Hooker demanded that Atlas provide indemnity as required by the contract and take over its defense. Atlas refused, and Hooker filed a third party demand seeking this relief. On appeal Hooker seeks the amount it expended in attorney's fees for its own defense.
Hooker concedes that the indemnity language of the contract does not require that Hooker be indemnified for damages caused by its own negligence. Hooker argues, however, that the damages here were caused by one or more of Atlas' employees and that since Hooker could only be vicariously or technically liable, Atlas should have provided indemnity and a defense.
*677 Plaintiff's petition alleged Hooker was liable on the basis of its independent negligence and of its negligence or responsibility in relation to Giambelluca's contractual operations. There was no allegation of liability asserted against Hooker in relation to Atlas' contractual operations. Thus, unless the pleadings were expanded, Hooker could only have been found liable on the basis of its own negligence or that of Giambelluca.
There was no relationship whatsoever between the asserted basis for Hooker's liability and the operations of Atlas as Hooker's contractor. The contract terms provided for indemnity for Hooker's liability for Atlas' negligence, but not for Hooker's own negligence or for Hooker's liability for negligence of a third party. Under these circumstances neither indemnity nor defense was owed by Atlas.
Decree
The judgment of the trial court is reversed in part, and it is now ordered that judgment be rendered in favor of plaintiff Tom Sullivan and intervenor United States Fidelity & Guaranty Company and against George Moran in the amount of $35,000.00, plus interest from judicial demand until paid and all costs of these proceedings, with the amounts expended by the intervenor in compensation payments and medical expenses to be paid by preference and priority. In all other respects the judgment is affirmed.
REVERSED AND RENDERED IN PART, AFFIRMED IN PART.
NOTES
[1] There were several estimates of the pertinent distances. The distances used in the statement of facts are those most consistent with the trial court's conclusions.
[2] The consideration that plaintiff probably would not have been injured as he was if he had not been on the bumper is not determinative of contributory negligence, but only determines cause-in-fact. Every cause-in-fact does not produce legal liability. The critical determination is whether the pertinent risk is within the scope of the protection of the duty violated. See Robertson, Reason versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., [260 La. 542, 256 So.2d 620] 34 La.L.Rev. 1 (1973), footnote 47; Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970), footnote 2.
[3] The court was apparently referring to the following principle stated in Brantley v. Brown, above:

"An outrider on a vehicle assumes only such risks as are ordinarily incident to his position. He does not assume the risk of negligent driving on the part of his driver, as he is ordinarily entitled to rely reasonably upon his driver's exercise of ordinary care. He particularly does not assume the risk of the negligence of the driver of another vehicle which collides with that upon which he is riding".
[4] In November, 1974 plaintiff had consulted a vascular surgeon who found an ulcer, mild edema and tenderness. The doctor tentatively diagnosed a vascular ulcer, probably arterial (which is caused by lack of blood supply resulting from injury or occlusion of an artery). Angiographic testing was scheduled, but was subsequently cancelled by plaintiff.