Stanley Wayne LAIRD,
Plaintiff-Appellant,

and

Insurance Company of North America,
Intervenor-Appellant,

v.

SHELL OIL COMPANY, Defendant-Third Party
Plaintiff-Appellee-Appellant,

v.

L & L SANDBLASTING, INC., Intervenor-Third Party
Defendant-Appellee-Appellant.

No. 83–3710.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1985.

---

Due, Dodson, DeGravelles & Robinson, Chester John Casey, Baton Rouge, La., for Laird.

Adams & Reese, James E. Blazek, William B. Gaudet, Arthur Crais, Jr., New Orleans, La., for Shell.

Young, McMahon & Levert, George J. Richaud, New Orleans, La., for Ins. Co. of North America.

R.K. Christovich, Thomas C. Cowan, New Orleans, La., for L & L Sandblasting.

Before RUBIN and REAVLEY, Circuit Judges, and SEAR,[*] District Judge.

ALVIN B. RUBIN, Circuit Judge:

Stanley Wayne Laird, a painter-sandblaster employed by L & L Sandblasting, Inc., was injured while working on a permanent offshore production platform owned by Shell Oil Company. Shell had contracted with L & L to repaint the platform. There was evidence that, while Laird was sitting on a bosun's chair engaged in cleaning work, the sisal rope supporting the suspended chair broke. Laird sued Shell, the platform owner, for negligence. Shell filed a third party claim against L & L for indemnity under the contract between them.

In answer to special interrogatories the jury found that Shell was not negligent and on this verdict judgment was entered for the defendant. The district court held that, under the contract between Shell and L & L, L & L did not owe indemnity to Shell and rejected Shell's claims for costs of de-

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

fense. Laird appeals asserting that the district court erred in refusing to instruct the jury that it might consider a Mr. White, Laird's supervisor and an L & L employee, Shell's borrowed servant and attribute his negligence to Shell. Shell seeks to have the liability judgment affirmed but to have the indemnity decision reversed.

We hold that the borrowed-servant issue was not raised in the district court and that the court, on the record before it at the time, did not err in refusing to give such a jury instruction. We also hold that, under Louisiana law, as interpreted by us in *Sullen v. Missouri Pacific Railroad Company*,[1] L & L did not owe Shell indemnity for the cost of Shell's successful defense because the complaint alleged no facts that, if proved, would have established liability of L & L.

## I.

While Laird did request a borrowed-servant jury instruction at the conclusion of the trial, the theory that Shell was vicariously liable for the acts of L & L's employees had not previously been relied upon either in the pleadings, the pretrial order, or at trial.

In the fourteen page pretrial order, only two statements even hint at a borrowed-servant claim. The order states that one of the contested issues of law is "whether Mr. Gene White [the L & L supervisor] was a delegated supervisory employee of Shell Oil Company at the time of and before the accident." The plaintiff's list of possible witnesses includes "Gene White ... as representative of Shell Oil Company and as representative of L & L Sandblasting." In the plaintiff's pretrial order summary of claims, however, there is no mention of a borrowed-servant or *respondeat superior* claim.

At the trial, as he had done in the pleadings and pretrial order, Laird focused solely on Shell's direct negligence and strict liability. These were the issues pursued in his counsel's opening statement, in which his counsel urged strenuously that Shell was at fault in failing to appoint a painting inspector. The theory now advanced, that Shell had appointed White, the L & L supervisor, as its own inspector and had therefore made White its borrowed employee, took coherent shape only in this appeal. Similarly in closing argument, Laird's counsel argued that Shell had the duty to appoint an inspector and did not do so: The L & L supervisor didn't know enough to do the job and "the paint inspector wasn't there" to tell him what to do and what not to do.

Laird explains that his tardy interest in the borrowed-servant theory was brought about by a "major event" that occurred during the trial. An operations foreman for Shell stated, contrary to his deposition testimony, that L & L's supervisor had been appointed the Shell Oil paint inspector on the job, indicating that the L & L supervisor had thus become Shell's borrowed employee. This contention of surprise is, to some extent, inconsistent with Laird's position that he had already raised and relied upon the borrowed-servant argument. Laird's counsel, moreover, expressed no surprise, did not seek to enlarge his pleadings, and did not seek to expand the issues stated in the pretrial order. He did not invoke Rule 15(b) of the Federal Rules of Civil Procedure, which affords recognition to issues actually tried with the express or implied consent of the parties but not raised by the pleadings, and he did not, even after trial, seek to amend the pleadings or to assert that the issue had been tried by consent. The jury charge appears to have been offered only as an afterthought.

 The trial court has no duty to give the jury an exegesis of legal principles that might enable a plaintiff to recover or to instruct the jury on issues not fairly raised by the pleadings, the pretrial order, or the course of the trial.[2] "[I]t has no obligation

**1.** 750 F.2d 428 (5th Cir.1985).

**2.** *See Wiley v. Offshore Painting Contractors,* 711 F.2d 602, 608–09 & nn. 11–14 (5th Cir.1983);

'to introduce issues inferentially suggested by incidental evidence in the record.' " [3] Construed most favorably to Laird, the record contains no more than an infrequent and inferential reference to a possible claim under a borrowed-servant/*respondeat superior* theory.

Not having raised the borrowed-servant issue in the trial court, Laird is barred from raising it on appeal.[4] The tardy injection of this issue at the appellate stage raises a considerable number of factual issues that should and could have been developed in the trial court. Whether there was an agreement between Shell and L & L that White, the L & L supervisor, was to be Shell's "borrowed servant," what work White performed, which company had control over him, whether White was acting within the scope of his duties as a Shell employee, and whether White's actions were the proximate cause of Laird's injuries are all issues left unexplored at the trial level. Shell cannot be faulted for failure to adduce evidence concerning what was at most a phantom issue that flitted across the pretrial order. As we stated in *Volkswagen of America, Inc. v. Robertson,*[5] if "consideration of the newly raised issue in the trial court would have resulted in additional facts being developed there, the rationale for the application of the general rules applies, and the issue will not be considered by the appellate court."

▉ The district court based its refusal to give the requested jury instruction on the lack of evidentiary support for the instruction on the merits, not on the belated raising of the issue. However, when the judgment of a district court is correct, it may be affirmed for reasons not given by the court and not advanced to it.[6]

## II.

▉ The agreement between Shell and L & L contained a provision requiring L & L to

defend and indemnify Shell ... against all losses, claims, suits, liability, and expense arising out of injury or death of persons (including employees of Shell, [L & L] or any subcontractor) ... resulting from or in connection with the performance of this order and not caused solely by Shell's negligence without any contributory negligence or fault of [L & L] or any subcontractor or their employees or agents.

This court has recently recognized a new rule for interpreting such clauses when incorporated in contracts governed by Louisiana law. In *Sullen v. Missouri Pacific Railroad Company,*[7] we said:

Louisiana law is definite and certain. Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings.... In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend.

We then concluded that "unless the contract of indemnity specifically provides for costs of defense as a separate item of indemnification, the indemnitor has no obli-

---

*see also Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982).

3. *Glass Containers Corp. v. Miller Brewing Co.,* 643 F.2d 308, 312 (5th Cir.1981) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1086 (2d Cir.1977)).

4. *Id.; Shingleton v. Armor Velvet Corp.,* 621 F.2d 180, 183 (5th Cir.1980).

5. 713 F.2d 1151, 1166 (5th Cir.1983).

6. *Estate of Whitt v. Commissioner,* 751 F.2d 1548, 1558 (11th Cir.1985); *Bickford v. International Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981); *see also Howard v. Gonzales,* 658 F.2d 352, 358 (5th Cir.1981).

7. 750 F.2d 428, 433 (5th Cir.1985) (citing *American Home Assurance Co. v. Czarniecki,* 255 La. 251, 230 So.2d 253 (1969); *Young Oil Co. of La., Inc. v. Durbin,* 412 So.2d 620 (La.Ct.App.1982); *Sullivan v. Hooker Chem. Co.,* 370 So.2d 672 (La.Ct.App.1979); *Pearson v. Hartford Accident & Indem. Co.,* 345 So.2d 123 (La.Ct.App.1977)).

gation to defend if the petition alleges facts which, if proven, would establish liability of the indemnitee but preclude coverage under the indemnity agreement."[8] An indemnitor who has no obligation to defend is equally free of any duty to reimburse on the costs of defense. *Livings v. Service Truck Lines of Texas, Inc.*,[9] a recent Louisiana Court of Appeals case, is not to the contrary. In *Livings*, so far as we can discern from the opinion, the indemnity agreement was not as limited as the agreement interpreted in *Sullen*.[10] *Sullen* is, moreover, consistent with the opinion of the Louisiana Fourth Circuit Court of Appeals in *Sullivan v. Hooker Chemical Company*.[11]

The complaint in this case alleged that Laird was injured when the rope suspending the bosun's chair broke; that his injuries were caused by Shell's negligence and its violation of regulations issued by the Secretary of the Interior; and that Shell was also strictly liable because it was engaging in ultra-hazardous activities. The complaint may be read as inferring that L & L's employees were negligent and that, had Shell not itself been negligent, it would have averted the consequences of L & L's negligence. This is nowhere made explicit. Indeed, while it does not allege that Shell was solely liable, the complaint does attempt to negate any negligence on the part of L & L. The complaint states that L & L had not exposed the rope to any chemically reactive substances and that Shell Oil Company, under the doctrine of *res ipsa loquitur*, was the only other possible entity responsible for the presence of corrosive chemicals. The complaint therefore alleges facts that, if proved, would establish Shell's sole liability and preclude coverage under the indemnity agreement.

The indemnity agreement is no more explicit on the costs of defense than the agreement considered in *Sullen*, which is set forth in the footnote.[12] *Sullen*, therefore, confirms the result reached by the district court.

For these reasons, the judgment is AFFIRMED.

---

**8.** *Id.* at 433–34.

**9.** 467 So.2d 595 (La.Ct.App.1985).

**10.** *Id.* at 598.

**11.** 370 So.2d 672, 676–77 (La.Ct.App.1979).

**12.** 3.2 CONTRACTOR [Broadmoor] agrees to defend and hold COMPANY [Chevron], its assigns, directors, employees, insurers, officers, stockholders and successors indemnified and harmless from and against any loss, expense, claim or demand for:

3.2.1 Injury to or death of CONTRACTOR'S employees or for damage to or loss of CONTRACTOR'S property in any way arising out of or connected with the performance by CONTRACTOR of services hereunder; and 3.2.2 Injury to, or death of, third persons or the employees of COMPANY, or for damage to or loss of property of COMPANY or of third persons, in any way arising out of or connected with the performance by CONTRACTOR of services hereunder. CONTRACTOR shall be liable for Property Damage to a maximum extent of $100,000.00.
*Id.* at 432.