Charles McCALL

v.

COLUMBIA GAS DEVELOPMENT CORPORATION, et al.

Civ. A. No. 83-3004.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 24, 1986.

Anthony D. Moroux, Domengeaux & Wright, Lafayette, La., for plaintiff.

John E. McElligott, Jr., Davidson, Meaux, Sonnier & McElligott, Lafayette, La., for Columbia Gas Development.

John A. Jeansonne, Jr., Jeansonne & Briney, Lafayette, La., for Maryland Casualty Co. and Consolidated Operating Co.

Susan A. Daigle and Edwin C. Preis, Jr., Preis, Kraft, LaBorde & Daigle, Lafayette, La., for PBW, Inc. and National Union Ins. Co. of Pittsburg.

W. Marvin Hall, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for PBW, Inc.

Michael G. Lemoine, Mouton, Roy, Carmouche, Bivins & Henke, Lafayette, La., for intervenor American Mut. Liability.

## RULING ON MOTIONS OF THIRD PARTY DEFENDANTS FOR SUMMARY JUDGMENT

VERON, Judge.

This matter comes before the Court upon the motions of third party defendants, PBW, Inc., National Union Fire Insurance Company of Pittsburgh, PA, Consolidated Operating Company, Inc. and Maryland Casualty Company for summary judgment to enter on their behalves as to the third party complaint of Columbia Gas Development Corporation. In its third party complaint, Columbia seeks indemnity and/or contribution from third party defendants arising from their alleged contractual obligations and/or tortious conduct.

Charles McCall was allegedly injured while in the course of painting and sandblasting an offshore drilling platform, located on the outer Continental Shelf adjacent to the State of Louisiana, owned by Columbia and operated by Consolidated on or about July 28, 1983. McCall's employer, PBW, had contracted with Columbia "[t]o furnish labor, equipment and materials necessary to do blasting and painting" on the platform, while Columbia had contracted with Consolidated to operate the platform. McCall initiated the present action, alleging negligence on the part of Columbia, later amending his complaint to allege negligence also on the part of Consolidated as a direct defendant. In its answer to the complaint, filed prior to plaintiff's amended complaint, Columbia included the instant third-party complaint against PBW and its insurer, National Union Fire Insurance Co. of Pittsburgh, PA [hereinafter collectively

referred to as PBW], as well as Consolidated and its insurer, Maryland Casualty Company [hereinafter collectively referred to as Consolidated]. In that third-party action, Columbia contends that PBW, Consolidated and their insurers are obligated to indemnify and defend it pursuant to the contracts in effect between them, and further alleges indemnity and/or contribution on the basis of PBW's and Consolidated's tortious negligence.

PBW and Consolidated have now filed for summary judgment on the ground that the indemnity provision of the contract in effect between the relative parties is null and void in accordance with the Louisiana Oilfield Anti-Indemnity Act, LRS 9:2780. Moreover, PBW asserts that Columbia's tort claim for contribution and/or indemnity is barred by the exclusivity provision set forth in 33 U.S.C. § 905(a).

## I. CONTRACTUAL INDEMNITY

The law is well-established that the Louisiana Oilfield Anti-Indemnity Act ["OAIA"] applies where, as here, the incident giving

rise to the complaint occurred on a stationary drilling platform on the outer Continental Shelf adjacent to the State of Louisiana.[1] *See Mills v. Zapata Drilling Corp.,* 722 F.2d 1170, 1174 (5th Cir.1983); *Moser v. Aminoil U.S.A., Inc.,* 618 F.Supp. 774 (W.D.La.1985). Columbia contends, however, that Texas law, rather than Louisiana law, should govern the dispute insofar as the effect of the indemnification agreements between the respective parties.

### A. *Choice of Law*

In considering the choice-of-law issue raised by Columbia, the Court is bound to apply the conflicts-of-law rules of Louisiana. *Hebert v. Kerr-McGee Corp.,* 618 F.Supp. 767, 769–72 (W.D.La.1985).[2] Louisiana choice-of-law rules employ the interest analysis of the Restatement, Second, Conflict of Laws. *Lee v. Hunt,* 631 F.2d 1171, 1175–76 (5th Cir.1980). Under that law, in determining which state has the most significant interests, the Court is to consider, *inter alia,* the place of contracting, place of negotiation, place of performance, location of the subject matter of

1. 43 U.S.C. § 1333(a)(2)(A) provides that "[T]o the extent that they are applicable and not inconsistent with … Federal laws … the civil and criminal laws of each adjacent State … are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf.…" This Court has previously examined the issue as to whether there is an impermissible inconsistency between the OAIA and the rule set forth in *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970) that the "federal common law" governing contracts entered into by the United States allows an indemnitee to recover against its indemnitor for claims arising from the indemnitee's own negligence. *Hebert v. Kerr-McGee Corp.,* 618 F.Supp. 767 (W.D.La. 1985). As in *Hebert,* this Court simply observes *Seckinger* is not itself applicable to purely private contracts on the Shelf and that, in any event, the phrase "other Federal laws" in section 1333(a)(2)(A) refers not to federal common law but instead to federal *statutory* law. *Id.* as such, the rule of federal common law in *Seckinger* does not invalidate the application of the Louisiana OAIA to indemnity agreements operating on the outer Continental Shelf adjacent to Louisi-

ana. Neither does anything in the OCSLA prohibit the application of the OAIA to the case at bar. *See Rigby v. Tenneco Oil Co.,* 607 F.Supp. 1247 (E.D.La.1985). Because the case at bar involves an alleged injury which occurred on a fixed platform, the Court need not address the effect of 33 U.S.C. § 905(c) as potentially being inconsistent with the OAIA insofar that it provides for reciprocal indemnities.

2. Columbia erroneously asserts that this Court is to apply the choice of law rules of the forum state in determining this question, citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Court's jurisdiction in the case at bar arises under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333 et seq. and *not* pursuant to any alleged diversity of citizenship under 28 U.S.C. § 1332. The rule promulgated by *Klaxon* is that the district court is to apply the choice of law rules of the forum state when it is vested with diversity jurisdiction. In the case at bar, the Louisiana choice of law rules apply not because they are the rules of the forum state, but because the OCSLA, 43 U.S.C. § 1333(a)(2)(A), serves to incorporate the laws, including the conflicts-of-law rules, of the adjacent state as surrogate federal law in cases arising on the outer Continental Shelf. *Hebert v. Kerr-McGee Corp.,* 618 F.Supp. 767, 769–72.

the contract at issue, and the domicile, place of incorporation and place of business of the parties. Columbia contends that under this approach, Texas has the most significant interests because it is Columbia's principal place of business and because the contracts at issue were "negotiated and perfected" there. The Court finds Columbia's limited analysis to be wholly unpersuasive. While Columbia may have its principal place of business in Texas, both PBW and Consolidated are Louisiana corporations, and all three corporations conduct business within Louisiana. Moreover, the place of the contract's performance is on the outer Continental Shelf adjacent to the State of Louisiana. While Texas may have an interest in having its law apply to issues of the interpretation of contracts negotiated within its borders, those issues involving the validity of contractual provisions more significantly involve the interests of the place of performance. *See, e.g., Keene Corp. v. Insurance Co. of North America,* 597 F.Supp. 934, 941 (D.D.C. 1984). All parties clearly understood that the place of performance was to be within Louisiana and the adjacent outer Continental Shelf, as the contract between Columbia and PBW, as well as the contract between Columbia and Consolidated, specifically provided: "The work to be performed hereunder shall be undertaken solely within the State of Louisiana and the [o]uter Continental Shelf of the Gulf of Mexico subject to federal jurisdiction under the OCS Lands Act, as amended, and/or the maritime jurisdiction of the U.S. Federal Courts." While the fixed platform on which McCall allegedly sustained his injury was not physically within the State of Louisiana, Louisiana yet has a significant interest in the application of its substantive law to those structures adjacent to its coast. This interest was recognized to have major significance in the congressional hearings on the OCSLA and has been noted by the United States Supreme Court. *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct.

1835, 23 L.Ed.2d 360 (1969); *see generally,* Hearings before the Cong., 1st Sess., on S. 1901 (1953). The "special relationship" between the men working on fixed platforms on the outer Continental Shelf and the adjacent shore to which they commute to visit their families was of primary consideration in the passage of 43 U.S.C. § 1333(a)(2)(A), which makes the substantive law of the adjacent state applicable to the fixed platform on the outer Continental Shelf to the extent that it is not inconsistent with federal statutory law. As such, Louisiana clearly has the most significant interest in the present dispute, and its substantive law therefore governs the case.

### B. *Louisiana Oilfield Anti-Indemnity Act*

 Columbia argues that even if Louisiana law is to be applied under the OCSLA, the contracts at issue should not be subject to the application of the Louisiana OAIA because the agreement to sandblast and paint the fixed drilling platform does not sufficiently pertain to "any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals ..., including but not limited to ... rendering services ... in connection with any well ... or other structure ... or ... any such work or services or any act collateral thereto...." [3] Columbia's position is meritless in view of the breadth of the quoted language of L.R.S. 9:2780 C, and this Court finds that both of the agreements at issue most certainly concern the rendering of services in connection with a fixed drilling platform and they therefore fall within the purview of the OAIA.

Columbia furthermore contends that, in any event, the OAIA "does not nullify the indemnity agreements *in their entirety*" because it provides that an oilfield agreement "is void and unenforceable *to the extent* that it purports to or does provide

---

**3.** See LRS 9:2780 C for the complete definition of what "agreements" fall within the purview of

the OAIA.

for defense or indemnity, or either, to the indemnitee against loss or liability for damages ... caused by or result[ing] from the sole or concurrent negligence or fault (strict liability) of the indemnitee...." [4] While it is clear that no defense or indemnity is owed where the indemnitee is at least partially at fault, the principal issue is essentially whether or not the OAIA prohibits the indemnitor from being obliged to pay the costs of defense if the indemnitee is ultimately found free from fault by the trier of fact. In *Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770 (W.D.La.1984), Senior District Judge Hunter held that if the OAIA is applicable, not only are the indemnity provisions of the contract invalidated, but any duty to defend is also nullified and the indemnitor owes no duty to defend the indemnitee. *Id.* at 776–77. This Court has subsequently followed and embellished this rationale in the case of *Moser v. Aminoil, U.S.A., Inc.*, 618 F.Supp. 774 (W.D.La.1985). Other federal district courts, however, have ruled in accordance with *Home Insurance Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218 (W.D.La.1984), wherein Judge Shaw held that the OAIA nullified the indemnity agreements to the extent that they purported to require the indemnitors to indemnify and defend the indemnitees against the consequences of the indemnitees' own negligence, *but* that the indemnitees would yet be entitled to the costs of defense if the jury subsequently found that the indemnitees were not negligent and were free from fault. *Id.* at 1222–23. Under this line of reasoning, a factual question as to the existence or absence of Columbia's sole or concurrent negligence or fault would preclude summary judgment in the case at bar. *See Loudermilk v. Chevron U.S.A., Inc.*, No. 84–0257, slip op. at 3 (W.D.La.

March 13, 1985).[5] *Nesom v. Chevron U.S.A., Inc.*, 633 F.Supp. 55 (E.D.La.1984).

With all due respect to my brothers, this Court finds the reliance upon *Home Insurance Co.* to be misplaced in light of two subsequent decisions by the Fifth Circuit Court of Appeals. Under *Sullen v. Missouri Pacific Railroad Co.*, 750 F.2d 428 (5th Cir.1985) and *Laird v. Shell Oil Co.*, 770 F.2d 508 (5th Cir.1985), the indemnitor has no obligation to provide indemnity for defense costs of an action in which the complaint alleges no facts that, if proved, would establish liability on the part of the indemnitor. The "new rule" for interpreting indemnity provisions incorporated in contracts governed by Louisiana law, recognized only after the decision in *Home Insurance Company* had been rendered, is explained as follows:

> Louisiana law is definite and certain. Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings.... In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend. *Laird, supra* at 511, citing *Sullen, supra* at 433. *See American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969); *see also Sullivan v. Hooker Chem. Co.*, 370 So.2d 672 (La.Ct.App.1979).

Thus, if the OAIA serves to nullify any obligation of PBW and Consolidated to indemnify Columbia, it likewise will serve to invalidate any duty to defend, *Aucoin, supra* at 776, provided that the plaintiff's precipitating pleadings allege facts that, if proven, would establish Columbia's liabili-

---

**4.** LRS 9:2780 B (emphasis added).

**5.** Judge Duhe, aligning himself with Judge Shaw and citing *Home Insurance Co., supra,* stated: "Since there is a question of fact as to whether Crown or Chevron was at fault in the facts at bar, it would be inappropriate to render sum-

mary judgment at this time, as a finding that Crown was at fault would result in the upholding of the indemnification clause [and require the indemnitor to reimburse Chevron for the costs of defending the suit]." *Loudermilk, supra,* slip op. at 3.

ty. *See Laird, supra* at 511–12.[6] Contrary to the holdings of *Home Insurance Co.* and its progeny, the ultimate outcome of the case therefore will have no effect upon the duty to defend. *Laird, supra* at 511–12; *Sullen, supra* at 433–34; *Moser, supra; see also Frazier v. Columbia Gas Development Corp.*, 596 F.Supp. 429 (W.D. La.1984), *rev'd on reconsideration* 605 F.Supp. 200 (W.D.La.1985).[7]

■ In the case at bar, McCall's complaint alleges that Columbia was negligent in failing to erect proper guards, failing to properly maintain the platform, failing to have proper barriers, and failing "to do what it should have done and to see what it should have seen." [8] The OAIA disallows PBW and Consolidated from defending or indemnifying Columbia for its sole or concurrent negligence or fault. In light of the

precipitating pleadings, there is clearly no basis upon which PBW or Consolidated could be required to indemnify and/or defend Columbia under the respective agreements in effect between them, and Columbia's claim for contractual indemnity must therefore fail *in toto. See Laird, supra* at 512; *Moser, supra; Frazier, supra.*[9]

## II.
## CONTRIBUTION/INDEMNITY IN TORT

While PBW and Consolidated are thus entitled to summary judgment on the issue of contractual indemnity, Columbia also has asserted a right to contribution and/or indemnity from said third-party defendants on the basis of their alleged tortious negligence. PBW, however, contends that it is also entitled to summary judgment on this issue because it is the plaintiff, McCall's

---

**6.** *Laird* and *Sullen* would subject this rule to the exception that indemnity may be owed if the agreement between the parties specifically provides for "costs of defense" as a separate item of indemnification. *Laird, supra* at 511–12; *Sullen, supra* at 433–34. Even if such a provision were present in the case at bar, however, the OAIA would nullify its application in accordance with the Act's explicit purpose "to declare null and void and against public policy of the State of Louisiana any provision in any agreement which requires *defense* and/or indemnification...." LRS 9:2780 A (emphasis added).

**7.** In *Frazier*, Judge Scott had originally ruled in accordance with *Home Insurance Co.*, in finding that the contractor could be required to indemnify and defend the platform owner to the extent that the agreement covered claims that were not caused by the negligence or fault of the platform owner. *Frazier v. Columbia Gas Development Corp.*, 596 F.Supp. 429 (W.D.La. 1984). After the Fifth Circuit rendered its decision in *Sullen*, however, Judge Scott reconsidered the matter and held that the contractor was not required to indemnify or defend the platform owner, and was not obliged to reimburse it for the costs incurred in its defense. *Frazier*, 605 F.Supp. at 201, citing *Sullen, supra.*

**8.** Plaintiff's Complaint, ¶ 5.

**9.** The contrary conclusion was reached by the Louisiana Third Circuit Court of Appeal in *Livings v. Service Truck Lines of Texas, Inc.*, 467 So.2d 595, 599–600 (La.App. 3d Cir.1985), which applied the rationale of *Home Insurance Co., supra.* While the Court is bound to apply in this OCSLA case as surrogate federal law on the

Shelf, the Court does not consider itself any more bound by the decisions of intermediate appellate state courts than it would in a diversity case. Under *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the decision of lower state courts are not controlling where the state's highest court has not spoken on the point. The federal courts must follow these decisions, however, absent a strong showing that the state's highest court would hold otherwise. E.g., *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *NCH Corporation v. Broyles*, 749 F.2d 247, 250 n. 4 (5th Cir.1985). The decisions in *Sullen* and *Laird* provide just such a strong showing that the Louisiana Supreme Court would not follow the holding in *Livings* on this point.

Judge Shaw, once again following his decision in *Home Insurance Co.*, recently stated: "At the time the Fifth Circuit rendered its decision [in *Sullen, supra* ], the Court did not have the benefit of the Louisiana Third Circuit Court of Appeals decision in *Livings* [citation omitted] which adopted this Court's decision *Home Insurance Co.* [citation omitted] holding that section 2780 did not prohibit payment of the costs of defense if the indemnitee is ultimately found free from fault by the trier of fact." *Rouse v. CNG Producing Co.*, No. 84–3077, slip op. at 2–3 (W.D.La. Jan. 14, 1986). This holding, however, fails to recognize that the Fifth Circuit declined to follow *Livings* in the subsequently decided *Laird v. Shell Oil Co.*, 770 F.2d at 512, wherein the Court reaffirmed its holding in *Sullen* and noted that "*Sullen* is, moreover, consistent with the opinion of the Louisiana Fourth Circuit Court of Appeals in *Sullivan v. Hooker Chemical Co.*, 370 So.2d 672, 676–77 (La.Ct.App.1979)."

employer and therefore cannot be held liable for McCall's injury other than pursuant to the obligations imposed upon it by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*[10]

The exclusive remedy provision of the LHWCA provides in pertinent part as follows:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.... 33 U.S.C. § 905(a).

The law is well-established in the Fifth Circuit that this exclusivity provision "effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification [and/or contribution] on a tort theory." *Ocean Drilling and Exploration Co. v. Berry Bros.,* 377 F.2d 511, 514–15 (5th Cir.1967), *cert. denied* 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967). Columbia, as well as Consolidated, however, argue that the case of *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), wherein the Supreme Court ruled that a similarly worded exclusivity provision in the Federal Employee's Compensation Act[11] did not bar an indemnity claim against the United States under the Federal Tort Claims Act, should apply to allow Columbia's indemnity claims against PBW to remain viable. The Court finds this contention to be without merit. Without going into the matter at length, the Court notes that the *Lockheed* decision

was specifically limited by the Supreme Court, which stated "We ... hold only that FECA's exclusive liability provision, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States." 103 S.Ct. at 1038. The Supreme Court furthermore distinguished FECA from the LHWCA, clearly indicating that its holding was not to affect the viability of the Section 905(a) exclusivity provision. *See id.; see also Johnston v. ARCO,* 620 F.Supp. 974, 975 (E.D.La.1985). Moreover, the Fifth Circuit has recently reaffirmed the rule set down in *Ocean Drilling, supra,* that the LHWCA "den[ies] third parties a right of contribution or indemnity from the employer even when the employer is at fault...." *Foreman v. Exxon Corp.,* 770 F.2d 490, 494 (5th Cir. 1985); *Peters v. North River Ins. Co.,* 764 F.2d 306, 310 (5th Cir.1985). As such, the Court holds that PBW, as McCall's employer, is entitled to summary judgment as to Columbia's third party claims for tortious contribution and indemnity.[12]

In consideration of the foregoing reasons, the Court GRANTS the motion of PBW (and its insurer, National Union Fire Ins. Co.) for summary judgment as to the third party complaint of Columbia, and GRANTS the motion of Consolidated (and its insurer, Maryland Casualty Co.) for summary judgment ONLY as to the contractual indemnity claim set forth in Columbia's third party complaint.

---

10. The OCSLA provides that the LHWCA governs compensation "[w]ith respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf...." 43 U.S.C. § 1333(b); *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980).

11. 5 U.S.C. § 8116 (c).

12. The Court finds no merit to Consolidated's argument that PBW effectively waived its tort immunity by entering into an indemnity contract with Columbia, citing *Tran v. Manitowoc Engineering Co.,* 767 F.2d 223 (5th Cir.1985). The effect of the OAIA is to make the indemnity provision in the agreement void *ab initio,* thereby precluding any "waiver" of tort immunity by PBW.