467 So.2d 595 (1985)
Alex LIVINGS, Plaintiff-Appellee,
v.
SERVICE TRUCK LINES OF TEXAS, INC., et al., Defendants-Appellants.
No. 84-343.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*596 Allen, Gooch & Bourgeois, St. Paul Bourgeois, IV, and Randall K. Theunissen, Lafayette, Woodley, Barnett, Cox, Williams, Fenet & Palmer, Edmund E. Woodley, Lake Charles, for defendants-appellants.
Caliste Beard, Jr., Lafayette, for plaintiff-appellee.
Glusman, Moore, Wilkinson, Arbour, Broyles & Glusman, Donna Garbarino and Edward F. Glusman, Baton Rouge, for defendant-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiff, Alex Livings, an oilfield worker for M & G Testing & Services, Inc. (M & G), instituted suit against Service Truck Line of Texas, Inc. (Service) and Amoco Production Company (Amoco) seeking damages for personal injuries allegedly caused by the negligence of Service and Amoco. Plaintiff, allegedly, was injured while testing drill pipe owned by Amoco. The incident occurred on property leased by Amoco from Service.
Service and Amoco filed third party demands against M & G and its insurer, United General Insurance Company, seeking indemnity and/or defense pursuant to "master service contracts", then in effect, between third party plaintiffs and M & G. Also, Service alleged a breach of contract by M & G for M & G's failure to secure insurance coverage in favor of Service.
*597 In response to the third party demands, M & G filed a motion for summary judgment alleging that the indemnity clauses in these contracts were unenforceable due to the enactment of the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780.
The trial court granted M & G's motion for summary judgment, concluding that the indemnity provisions set forth in the "master service contracts", then in effect, between Service, Amoco and M & G were null and void under the provisions of La.R.S. 9:2780. Service and Amoco appeal the trial court's judgment dismissing their third party demands.
La.R.S. 9:2780 provides in pertinent part:
"...
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.
* * * * * *
G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.
* * * * * *
I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the *598 indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C.
Amoco and Service entered into master service contracts with M & G on May 5, 1971 and February 9, 1979, respectively. These contracts provided that M & G would defend and indemnify Amoco and Service against any claims which arose in connection with services rendered by M & G on behalf of the indemnitees under the contracts.
Appellants, Amoco and Service, point out that their service contracts with M & G were executed prior to the effective date of La.R.S. 9:2780, i.e., September 11, 1981. Accordingly, appellants urge that the indemnity clauses in their service contracts with M & G are enforceable since section 2780 is not applicable.
In Home Insurance Company v. Garber Industries, Inc., 588 F.Supp. 1218 (W.D.La. 1984), the federal district court addressed the issue of whether section 2780 was applicable in situations where the master service contract was entered into prior to the effective date of La.R.S. 9:2780, stating:
"Section 2780 applies to agreements that are designed to provide indemnity for all work performed between the parties in the future. As the statute says, "[t]his specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name." La.R.S. 9:2780(I). By way of contrast, the statute does not apply to contracts that govern a "specific terminable performance" when such a contract was executed before the effective date of the Act. Id. The clear inference from this statutory distinction between the two types of contracts is that the Act will apply to a master service contract even if executed prior to the effective date of the Act."
We believe the interpretation given Paragraph I of the Act by the federal district court is sound and we find it persuasive. Hence, we conclude that the master service contracts executed in favor of appellants are subject to the provisions of La.R.S. 9:2780.
In doing so, we observe that Amoco asserts that its contract with M & G is for a "specific terminable performance". Specifically, Amoco argues that its contract with M & G is contingent upon its lease agreement with Service which is for a five year term. Should the lease terminate, Amoco submits that it would no longer need the services of M & G. Thus, according to Amoco, the master service contract with M & G is for a specific term, i.e., five years.
We do not find Amoco's argument persuasive. The lease agreement between Service and Amoco is not in the record. It is merely speculation to conclude that Amoco would no longer need the services of M & G if its lease agreement with Service ended. Therefore, we conclude that the master service contract perfected by Amoco and M & G is for an unlimited time period as is the agreement between Service and M & G. Both service contracts in question are not limited to a "specific terminable performance".
Additionally, appellants argue that La. R.S. 9:2780 is not applicable because M & G failed to establish that the pipe being tested by plaintiff at the time of his injury was to be put to a use designated in Paragraph C of the Act. This same argument was made to the trial court. The trial court, in rejecting this argument, stated in its written reasons for judgment:
"... Amoco and Service argue that since the pipe being tested was not then designated for the drilling of a specific well *599 but would be classified as inventory pipe that the Act does not apply. They argue that the pipe might never be used in the drilling of a well. The Court is of the opinion that this is too narrow a reading of the Act. Amoco is in the business of `exploration, development, production, or transportation of oil, gas or water'. One of the components of drilling is drill pipe and it is certainly prudent to have this pipe tested and ready ahead of time when needed. Service is also in the business of storing and transporting drill pipe, an operation relating to the `exploration, development, production, or transportation of oil, gas or water'. The Court is of the opinion that the language of Paragraph C of the Statute is broad enough to cover the activities in the instant case, and that the Statute must be interpreted broadly and not narrowly since it was the intent of the legislature to declare null and void and against public policy any provision and any agreement which requires defense and/or indemnification in oil related contract activity."
We agree with the trial court's reasoning. We do not believe that the services must be rendered at the site of or in connection with the drilling or operation of a specific well to fall within the provisions of La.R.S. 9:2780. Unquestionably, the services rendered by M & G were related to the "exploration, development, production, or transportation of oil, gas or water." Thus, we find this argument without merit.
Service next contends that the service contract it entered into with M & G required M & G to secure policies of insurance naming Service as an additional insured. Since M & G failed to secure such additional insurance, Service posits that it has a breach of contract claim against M & G aside from any indemnity claim. Service submits that La.R.S. 9:2780 does not affect its breach of contract claim.
Inasmuch as we have found La.R.S. 9:2780 applicable to the contracts in question, we note that Paragraph G of section 2780 specifically states that provisions in "master service contracts" requiring the indemnitor to secure insurance on behalf of the indemnitee are null and void. In light of Paragraph G, Service's argument in this regard is without merit.
Finally, Amoco posits that summary judgment was improper in this case, even if La.R.S. 9:2780 is applicable, because it must be first shown that the indemnitee is at fault before the indemnity provisions of the contract can be declared void under section 2780. In other words, Amoco urges that if it be determined that the indemnitees are not at fault, then they are entitled to the costs of defense from the indemnitor, M & G. Amoco cites Home Insurance Company v. Garber Industries, Inc., supra, as authority for its position.
The court in Home Insurance addressed this precise issue and stated:
"... Subsection (B) of the Act plainly states that an oilfield indemnity agreement "is void and unenforceable to the extent that it purports to or does provide" for defense and indemnity against the negligence or other fault of the indemnitee or, among others, independent contractors who are directly responsible to the indemnitee. This language compels the conclusion that section 2780 nullifies an oilfield indemnity agreement only to the extent that the agreement purports to defend and indemnify a party against the consequences of its own negligence. Application of section 2780 leaves the indemnity agreement valid and enforceable in all other respects." (footnote omitted).
As a result of this rationale, the Home Insurance court determined that the indemnitee was entitled to the costs of defense if found to be free from fault.
We fully agree with this reasoning. Therefore, the issue of Amoco's and Service's negligence or fault must be fully explored before a determination can be made concerning the validity of the "master service contract" insofar as it purports to obligate M & G to provide a defense in this action for Amoco and Service. Consequently, *600 the trial court erred in granting a summary judgment in favor of M & G on this issue.
Finally, M & G argues that it owes no duty under the "master service contract" with Service to provide Service with a defense in the instant suit because, at the time of accident, M & G was performing work solely for and at the direction of Amoco. Stated another way, M & G urges that since, at the time of accident, it was performing no work under the "master service contract" with Service, there can be no claim made under that contract. This contention was not advanced in the trial court and is urged for the first time on appeal.
As is customary in the industry "master service contracts" do not provide for any specific work or services to be performed, but refer in general terms of a need by one party for labor, services or materials, and the desire on the part of the other to furnish same. Specific services are later called for under the master services agreement by work orders, purchase orders or simply invoices. Although there is some documentation in the record indicating that the services in this case supplied by M & G were at the behest of Amoco, the record does not make clear that the facts and circumstances surrounding the transaction were not such as to also trigger applicability of the master service agreement between Service and M & G. It is well settled that any doubt concerning whether all material issues have in fact been disposed of should be resolved against the mover and in favor of a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
For the above and foregoing reasons, the trial court's judgment insofar as it summarily denied third party plaintiffs' claim for the costs of defense under the "master service agreements" should third party plaintiffs be found free from fault is reversed and set aside. The trial court's judgment is affirmed in all other respects and this matter is remanded for further proceedings. Costs of this appeal are assessed to M & G Testing & Services, Inc. All other costs to await a final disposition of this matter.
AFFIRMED IN PART; REVERSED IN PART; AND, REMANDED.