Leo **FERGUSON**

v.

**STINGRAY PIPELINE COMPANY, et al.**

Civ. A. No. 86–3142.

United States District Court, W.D. Louisiana, LaFayette/Opelousas Division.

Nov. 9, 1987.

---

C. Brent Coreil, Ville Platte, La., for plaintiff.

Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, John H. Hughes, Lafayette, La., for intervenor.

Liskow & Lewis, S. Gene Fendler and Russell Keith Jarrett, New Orleans, La., for defendants.

Juneau, Hill, Judice, Hill & Adley, Michael W. Adley, Lafayette, La., for Nautilus Engineering & Const. Inc.

### RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on Nautilus Engineering & Construction, Inc.'s ("Nautilus") Motion for Partial Summary Judgment against the third-party demand of Stingray Pipeline Company, Trunkline Offshore Company, and NGPL Offshore Company ("Stingray").

Plaintiff sued Stingray for injuries allegedly sustained while working on Stingray's stationary platform over the Outer Continental Shelf off the Louisiana coast. Stingray filed a third-party complaint against Nautilus, plaintiff's employer, seeking indemnification pursuant to an indemnity provision in the construction contract between Stingray and Nautilus.

Nautilus makes two arguments in support of its motion.

First, that the Louisiana Oilfield Indemnity Act, La.R.S. 9:2780, bars Stingray's claim, except with regard to the issue of attorney's fees and costs. *See Meloy v. Conoco, Inc.*, 817 F.2d 275 (5th Cir.1987).

Because Stingray is engaged only in gas transmission, the question arises whether the Stingray–Nautilus contract comes within the Act.

Second, that the contract language does not provide for indemnification against the indemnitee's (Stingray's) own negligence. Because Louisiana law does not require any specific language in an indemnity agreement, the question arises whether the provision here effectuates indemnification for Stingray's negligence.

We grant Nautilus' motion. We base our decision on the first of Nautilus' arguments, namely, that the Stingray–Nautilus contract is within the scope of Louisiana's Oilfield Indemnity Act. Therefore, we find it unnecessary to reach Nautilus' second argument concerning the actual contract language.

The scope of the Louisiana Oilfield Indemnity Act is an issue of first impression in this Court.

Nautilus cites us to *Livings v. Service Trucklines of Texas, Inc.*, 467 So.2d 595 (La.App. 3rd Cir.1985). In *Livings*, plaintiff was injured while testing drill pipe owned by defendants on property owned by defendants. Defendant third-partied plaintiff's employer, seeking indemnification pursuant to contract provisions in effect between the parties. Plaintiff's employer argued that the indemnity provisions were null and void under the Louisiana Oilfield Indemnity Act. Defendants argued that the Act did not apply because "the pipe being tested was not then designated for the drilling of a specific well." *Livings, supra*, at 598 (quoting the trial court). *See* La.R.S. 9:2780(C). The *Livings* court dismissed defendant's argument as meritless:

> We do not believe that the services must be rendered at the site of or in connection with the drilling operation of a specific well to fall within the provisions of La.R.S. 9:2780. Unquestionably, the services rendered by [the employer] were related to the 'exploration, development, production, or transportation of oil, gas or water.'

*Livings, supra*, at 599.

Stingray contends that the Act does not apply because Stingray is a gas trans-.

mission company, not engaged in the business of exploration or production, and because the offshore platform here is solely a compressor station "incidental to the transmission of natural gas through Stingray's pipeline." We disagree.

First, we agree with *Livings* that the Act is to be interpreted broadly.

Second, we quote the Act:

It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons....

La.R.S. 9:2780(A). To implement this intent, we find it necessary to apply the Act in the matter before us where a worker alleges injuries sustained while working on an offshore platform.

The contract here, for replacement of recuperators on Stingray's compression platform, was certainly "related to ... transportation of oil, gas, or water." La.R.S. 9:2780(C). *See Livings, supra,* at 599. In addition, even if we disagreed with *Livings* that the services need not be rendered in connection with a specific well, we would still find that the agreement here "pertains to a well for oil, gas, or water," as required by the Act. La.R.S. 9:2780(C). Simply put, the gas with which Stingray's platform is involved "pertains to a well."

Stingray cites us to *Clarkco Contractors, Inc. v. Texas Eastern Gas Pipeline Co.,* 615 F.Supp. 775 (M.D.La.1985). In *Clarkco,* plaintiff was injured in an explosion while working on gas pipeline owned by defendant, a natural gas transmission company. Defendant sought indemnification from plaintiff's employer pursuant to a contract provision then in effect. The *Clarkco* court held that the Louisiana Oilfield Indemnity Act did not void the indemnity provision:

This contract, which relates to work to be performed upon an interstate natural gas transmission pipeline, is not an

agreement 'pertaining to wells, for oil, gas, or water, or drilling for minerals' and the statute does not apply to it. *Clarkco, supra,* at 781.

First, we are not convinced that the *Clarkco* analysis, which concerns work on an interstate pipeline, is analogous to the matter before us, which concerns work on an offshore platform.

Second, even if we were convinced that *Clarkco* is analogous, we note that the jurisdiction of the *Clarkco* court was predicated upon diversity of citizenship. In carrying out its *Erie* assignment, *Clarkco* referred to no Louisiana state court decisions.*

Although a federal court sitting in diversity is not bound by intermediate state court decisions, a federal court is not to disregard such decisions "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (quoted in *Commissioner of Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967)). We have not located, nor has Stingray referred us to, "persuasive data" that indicates the Louisiana Supreme Court would not apply the Oilfield Indemnity Act in the matter before us.

Third, we also note that we are not in this case sitting precisely as an *Erie* court. Under the Outer Continental Shelf Lands Act, we are applying state law as surrogate federal law. We are, more precisely, sitting as a *Lands Act* court. As a *Lands Act* court, we have "more discretion and broader authority in [the] evaluation, analysis, and application of state law to a given fact situation than an *Erie* court." *Knapp v. Chevron U.S.A., Inc.,* 781 F.2d 1123 (5th Cir.1986). Therefore, even without the guidance of *Livings,* we remain convinced that the Oilfield Indemnity Act shall apply in this matter.

* Apparently, *Livings,* which was decided April 10, 1985, was not available to the *Clarkco* court, which was decided July 11, 1985.

Nautilus' Motion for Partial Summary Judgment is GRANTED.