**UNITED STATES FIDELITY & GUARANTY COMPANY**

v.

**LOOP, INC.**

Civ. A. No. 89–5062.

United States District Court, E.D. Louisiana.

July 24, 1991.

Wood Brown, III, John Y. Pearce, and Andrew M. Edwards, II, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for plaintiff.

André J. Mouledoux, Alan G. Brackett, and Peirce A. Hammond, II, Hebert, Mouledoux & Bland, New Orleans, La., for defendant, Loop, Inc.

## MEMORANDUM OPINION

MENTZ, District Judge.

Due to the nature of this case and the issues involved, the parties agreed to bifurcate this matter, with the issue of whether the Louisiana Oilfield Indemnity Act ("LOIA")[1] applies to defendant, Loop, Inc. ("Loop"),[2] to be heard first, any remaining issues to be tried separately after the Court ruled on the LOIA issue. The parties also agreed to submit the LOIA issue on briefs and depositions to the Court. The last brief was subsequently submitted on May 28, 1991, and the Court took the matter under submission on that date. Therefore, after considering the submissions of the parties, the record, and the law, the Court makes the following findings of fact and conclusions of law.

### Discussion

The sole issue presented is whether the LOIA applies to Loop. The LOIA was enacted in 1981 by the Louisiana Legislature in response to complaints from small oilfield service contractors who believed it was inequitable for oil companies to be allowed to require them, in their individual

---

1. La.Rev.Stat.Ann. § 9:2780 (West 1991).

2. Loop is an acronym for Louisiana Offshore Oil Port.

service contracts, to insulate the oil companies from their own negligence in return for business. The legislature subsequently found the practice of requiring the small oilfield contractors to sign agreements that would require them to indemnify and hold harmless the larger oil companies, even in the event of the larger companies' own negligence, was indeed economically coercive, and therefore, against public policy. La.Rev.Stat.Ann. § 9:2780(A) (West 1991). In addition, courts have observed that allowing a party to insulate itself from its own negligence creates a disincentive to provide a safe work place. *See e.g., Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1130 (5th Cir.1986). The LOIA, therefore, declares that indemnity, hold harmless, or additional assured provisions in agreements pertaining to wells for oil, gas, or water, or drilling for minerals are void and unenforceable. La.Rev.Stat.Ann. § 9:2780(B).

### Does the LOIA apply to Loop?

■ Loop is a corporation whose shareholders include several major oil companies. Loop's facilities consist of a platform located twenty miles off the coast of Louisiana in the Gulf of Mexico. This platform is operated as a deepwater port pursuant to licenses granted by both the United States government and the State of Louisiana. The port terminal facilitates the offloading of supertankers whose sizes prevent them from discharging their cargoes at inland port facilities. The crude oil is offloaded from the supertankers via floating hoses and then moved through a series of undersea and onshore pipelines to Loop's salt dome storage caverns at Clovelly, Louisiana. The oil is metered as it is received from the supertankers and again as it is transferred from the salt dome caverns

into pipelines not owned by Loop for routing to various refineries. Each salt dome has a series of wells which were drilled for the purpose of pumping the crude oil into the salt dome caverns for storage and withdrawing it for transfer to the various refineries.[3] The Loop complex also includes a small boat harbor and hose testing facility on Bayou Lafourche near Belle Pass, a pumping booster station at Fourchon, various injection pumping stations, and a brine storage reservoir at Clovelly.

With the exception of the wells used to facilitate the storage and subsequent withdrawal of crude oil from the salt dome caverns, Loop does not own or operate oil, gas, water, or mineral wells. There are no wells or drilling equipment at the Loop platform terminal. None of Loop's equipment is affixed to or on line with drilling equipment or oil and gas wells. Loop is not a pipeline company and is not licensed as such. Loop's business is essentially receiving oil from crude oil-bearing supertankers via its deepwater terminal and storing that oil in its land based salt dome caverns.

■ The Court finds that Loop's business does not bring it within the coverage of the LOIA. It is clear from the case law that the LOIA must be construed broadly. *Copous v. ODECO Oil & Gas Co.*, 835 F.2d 115, 116 (5th Cir.1988) (per curiam); *Nesom v. Chevron, USA, Inc.*, 633 F.Supp. 55, 60 (E.D.La.1984); *Livings v. Service Truck Lines of Texas, Inc.*, 467 So.2d 595, 598–99 (La.App. 3rd Cir.1985). However, the Court believes that the broad construction required refers to those agreements which have some connection or are related to drilling or wells in the conventional meaning of those terms.[4] In other words, the

---

**3.** The removal of oil stored in salt dome caverns is more properly termed "withdrawal" and not extraction or production as USF & G argues. La.Rev.Stat.Ann. § 30:23 specifically regulates oil storage and removal in salt dome caverns as "underground storage" and "withdrawal", not as production and extraction as is contemplated of oil wells in the conventional sense.

**4.** We believe the LOIA should be broadly construed once it has been determined that the

subject agreement involves a company that is in the business of drilling for oil, exploring for oil, or producing oil. And, that broad construction would include any and all contracts that are incidental to that company's business. Therefore, a catering contract between a caterer and a oil producing platform well owner would be within the coverage of the LOIA because the contract is incidental to the platform owner's business of extracting oil from its well. *See Cooper v. Offshore Express, Inc.*, 717 F.Supp.

LOIA is meant to apply to those companies in the business of exploring for, developing, and extracting oil, gas, water, or minerals—not, as is the case with Loop, to those companies in the business of receiving and storing oil cargo offloaded from ships.

■ The plaintiff, United States Fidelity & Guaranty Co. ("USF & G"), argues that because the platform and its piping are connected to the salt dome wells, Loop comes within the coverage of the LOIA. They argue that the salt dome wells are really no different than any other well and that those wells extract oil from the salt dome caverns every time oil is removed from the caverns for transmission to refinery-owned pipelines. We disagree. Oil can only be "produced" or "extracted" one time, and the wells that produced or extracted the oil that Loop receives and stores are in no way connected to Loop's receiving and storage facilities. In all likelihood, those wells are probably somewhere in the Middle East, South America, or the North Sea. The fact that the salt dome caverns were drilled to facilitate their use as storage tanks does not make Loop a company in the business of developing, exploring for, or extracting oil. The salt dome wells are incidental to *storage* and not incidental to developing, exploring for, or extracting oil. By the time Loop has received the oil it stores, that oil has already been explored (discovered), extracted (probably from foreign wells), and developed (eventually moved from those wells to port for loading into the supertanker transports).

■ In the same sense, Loop's pipelines running from the deepwater terminal to onshore storage facilities are incidental to Loop's receiving and storage business. And, the fact that those pipelines are connected to the salt dome wells is inconsequential because those wells are also incidental to Loop's receiving and storage business. Since Loop's pipelines are not connected to *producing* wells or drilling equipment, and since Loop's business is not related to or incidental to *producing* wells or drilling equipment, the LOIA simply does not apply to Loop. *See and compare Transcontinental Gas Pipe Line v. Lloyd's, London*, 734 F.Supp. 708 (M.D.La. 1990); *Griffin v. Tenneco Oil Company*, 519 So.2d 1194 (La.App. 4th Cir.), *writ denied*, 521 So.2d 1154 (La.1988); *Clarkco Contractors Inc. v. Texas Eastern Gas Pipeline*, 615 F.Supp. 775 (M.D.La.1985) *with Murray v. Trunkline Gas Co.*, 544 So.2d 28 (La.App. 4th Cir.), *writ denied*, 547 So.2d 1317 (La.1989); *Ferguson v. Stingray Pipeline Company*, 672 F.Supp. 944 (W.D.La.1987).

■ Furthermore, Loop's business activities are related to loading and unloading vessels. The loading and unloading of vessels are traditional maritime activities, while drilling for and production of oil are not. *See Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). The work carried out by Loop's onshore facilities is also related to the loading and unloading of the supertankers. For example, Loop's Small Boat Harbor serves as a testing site for the floating hoses used at the terminal platform.

Finally, in addition to the other cases cited herein, the Court notes that in another case recently decided in the Eastern District Judge Beer, faced with the same arguments presented here, refused to exclude common sense from his consideration of the issue. *Coleman v. Loop, Inc.*, Oral Ruling of April 3, 1991 (E.D.La.1991) (transcript attached as Defendant's Exhibit 15). Judge Beer found that Loop's business was storing oil and not exploring or drilling for oil. Noting that the purposes of the LOIA were apparent to the legislature and all those involved in its enactment, Judge Beer refused to extend the Act to what is basically an oil storage facility. This Court agrees. Regardless of whether Loop uses wells to facilitate its oil storage business, it is still in the oil storage business and not the oil production business.

1180 (W.D.La.1989), *aff'd*, 915 F.2d 1569 (5th Cir.1990). However, a contract between Loop and the same caterer would not be covered by the LOIA because such a contract would be incidental to Loop's oil cargo receiving and storage business.

Accordingly,

IT IS ORDERED that as a matter of law the Louisiana Oilfield Indemnity Act does not apply to Loop, Inc. in the context of the present case.