George A. TROSCLAIR, Jr.

v.

CHEVRON U.S.A., INC.

No. G–99–795.

United States District Court, S.D. Texas, Galveston Division.

Aug. 8, 2001.

Ronald L. White, White, Mackillop, Houston, TX, mediator.

Francis I. Spagnoletti, Spagnoletti & Assoc., Houston, TX, for Plaintiff.

Edward Wesley Johnson, Johnson, Ferguson, Houston, TX, for Chevron USA, Inc.

Henry H. LeBas, Attorney at LAw, Lafayette, LA, Jeff Raymond Rytlewski, Henry H. LeBas, Layfayette, LA, for Eagle Pacific Ins. Co.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this declaratory judgment action seeking a declaration that Defendant, his workers' compensation carrier, is not entitled to enforce a lien on Plaintiff's settlement with a third-party. Defendant has counterclaimed to enforce the lien. Now before the Court are Plaintiff's and Defendant's competing Motions for Summary Judgment. For the reasons stated below, Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED**.

### I. BACKGROUND

Plaintiff was a galley hand for Sonoco Catering Services ("Sonoco"), a company which provides catering services to companies engaged in offshore oilfield operations. At the time of his injury, Plaintiff was working for Sonoco aboard Chevron U.S.A., Inc.'s ("Chevron") South Timbalier 151 Platform ("Platform 151") located off the coast of Louisiana. He was allegedly injured as a result of being required to manually lift a slippery Chevron water container from a cargo basket to the Platform.

As part of the "Master Service" agreement between Sonoco and Chevron ("Sonoco–Chevron agreement"), Sonoco agreed to provide insurance for its employees working aboard Chevron's platform and to waive any right to subrogation for claims that its employees might have against Chevron. Sonoco also agreed to indemnify Chevron for any claims that a Sonoco employee may have against Chevron in connection with the performance of the agreement. Eagle Insurance Co. ("Eagle") was the insurance carrier which provided workers' compensation insurance for Sonoco's employees, including Plaintiff. The agreement between Eagle and Sonoco ("Eagle–Sonoco agreement") also contained a waiver of subrogation clause, waiving Eagle's right to subrogation to the extent that Sonoco had entered into a contract containing a valid and enforceable waiver of subrogation with another company, e.g. Chevron.

Plaintiff claims that on August 24, 1999, he was injured through the fault of Chevron while working in the course and scope of his employment with Sonoco aboard Chevron's Platform 151. He brought suit against Chevron and subsequently settled his claims against Chevron for $390,000. Prior to the settlement, Eagle had paid approximately $119,000 in benefits to Plaintiff.[1] Eagle alleges that Plaintiff settled with Chevron without Eagle's notice or consent, and that Eagle is entitled to reimbursement out of the settlement proceeds. Eagle, however, did not intervene in the suit.[2] Thus, Plaintiff brought this declaratory judgment action seeking a judicial determination that Eagle is not enti-

---

**1.** The benefits consisted of $98,720.53 in medical benefits and $20,432.17 in indemnity benefits.

**2.** Instead, Eagle brought suit in state court in Louisiana. Plaintiff removed the action to this Court, and the suit was consolidated with this action.

tled to be reimbursed for its payment of benefits. Eagle has counterclaimed to enforce its lien.

Eagle argues that the Sonoco–Chevron agreement was a contract of adhesion and that its waiver of subrogation is unenforceable under Louisiana law. Further, Eagle argues that if it is not entitled to enforce a lien on the settlement, Plaintiff will obtain a double recovery. Plaintiff argues, on the other hand, that the waiver of subrogation is enforceable, and that allowing Eagle to enforce a lien would allow Eagle to obtain reimbursement while pocketing the higher premium it presumably charged Sonoco when it agreed to the waiver of subrogation clause in the Eagle–Sonoco agreement.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, sum-

mary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Cas. Co., 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553; see also Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. See Matsushita, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; Wise v. E.I. DuPont de Nemours & Co., 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. See Matsushita, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## III. ANALYSIS

The key question in this case is whether Eagle's waiver of subrogation is enforceable. If so, then Eagle is not entitled to enforce a lien. See Allen v. Texaco, Inc., 510 F.2d 977, 978 (5th Cir.1975) (hold-

ing that a waiver of subrogation by a compensation carrier bars a lien against proceeds of a settlement between the covered employee and a third-party). Eagle's waiver of subrogation, by its own terms, is contingent upon Sonoco having validly waived its own right of subrogation. Thus, the Court must initially determine the validity of Sonoco's waiver of subrogation.

### A. Sonoco's Waiver

In order to ascertain the validity and enforceability of Sonoco's waiver of subrogation, the Court must first determine what law applies. Plaintiff brought suit against Chevron under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et seq. Eagle argues that Louisiana law, as the law of the adjacent state, must be applied as surrogate federal law pursuant to OCSLA. Plaintiff, though obviously admitting that OCSLA applies, does not concede that Louisiana law governs the dispute, instead analysing the issue under both federal maritime law and, in the alterative, Louisiana law.

Under OCSLA, 43 U.S.C. § 1333(a)(2)(A), the law of the State adjacent to a fixed platform on the outer Continental Shelf acts as the Federal law to be applied in a dispute involving such a platform. In order for State law to apply, however, certain conditions must be met.[3] The only basis that Eagle provides for attacking the waiver is the Louisiana Oilfield Anti–Indemnification Act ("LOAIA" or the "Act"), La.Rev.Stat. Ann. § 9:2780 (West 1991). The Court need not reach

the choice of law issue, however, because even assuming that Louisiana law applies, LOAIA would not invalidate the waiver.

■ LOAIA provides in relevant part:

Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

*Id.* § 9:2780(B). Specifically addressing waivers of subrogation, Subsection G of LOAIA provides that any provision "which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section shall be null and void and of no force and effect." *Id.* § 9:2780(G).

Assuming that the Sonoco–Chevron agreement is the type of contract falling within the ambit of LOAIA, the waiver of subrogation contained therein is nevertheless valid. In *Fontenot v. Chevron U.S.A., Inc.,* 676 So.2d 557 (La.1996), the Louisiana Supreme Court considered an almost identical factual scenario and concluded that the LOAIA did not bar the enforcement of a waiver of subrogation.

---

**3.** Specifically, the Fifth Circuit has held that for adjacent State law to apply as surrogate Federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto)

[;] (2) Federal maritime law must not apply of its own force [;] (3) The state law must not be inconsistent with Federal law." *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1047 (5th Cir.1990).

Although the case considered only an insurer's waiver of subrogation, its reasons apply equally to an insured contractors' waiver as well.

The facts of *Fontenot* are strikingly similar to the facts of this case. Fontenot was an employee of Hercules Offshore Drilling Company ("Hercules"). *Id.* at 559. Hercules entered into an agreement with Chevron to perform remedial well services on several Chevron offshore platforms. *Id.* Hercules, like Sonoco, agreed to provide insurance for its employees and to waive any right to subrogation it might have. *Id.* Aetna, the workers' compensation carrier, also agreed to waive its right to subrogation. *Id.*

Fontenot was injured in the course and scope of his employment and subsequently settled a suit it brought against Chevron,[4] without Aetna's participation or consent. *Id.* at 560. Aetna intervened in the suit and sought reimbursement for the workers' compensation benefits it had paid. *Id.* Fontenot, like Plaintiff, raised the waiver of subrogation as a defense. Aetna, like Eagle, argued that the waiver of subrogation violated LOAIA. *Id.* at 560–61. The Louisiana Supreme Court rejected Aetna's argument. *Id.* at 560.

The Louisiana Supreme Court ruled that LOAIA does not invalidate all waivers of subrogation, only those, as the statute states, "which would frustrate or circumvent the prohibitions of [the Act]." *Id.* at 564. The Court concluded that the waiver at issue in *Fontenot* did not frustrate the prohibition of the Act. *Id.* at 564. The Court reasoned that only when a waiver of subrogation is used in conjunction with an indemnification clause is the oil company indemnitee benefitted. *Id.* In such a case, the oil company is allowed to

supplement its shifting of liability to the contractor with the assurance that it will not have to reimburse workers' compensation payments. *Id.* at 565. A waiver of subrogation standing alone neither supplements a shifting of liability nor serves to itself shift liability. The Act "arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract." *Id.* at 563. A waiver of subrogation used in tandem with an indemnification clause would leave the contractor on the hook for both workers' compensation and tort damages, rather than one or the other. *Id.* at 564. Used alone, however, the waiver of subrogation does not create this predicament. *Id.* at 565.

Next, the Court noted that no indemnification came into play in *Fontenot*. *Id.* Although Hercules had agreed to indemnify Chevron, Chevron had not sought to enforce the indemnification clause. *Id.* Thus, the Court concluded that the waiver of subrogation did not frustrate the prohibitions of the Act and hence was enforceable. Likewise, although here Sonoco had agreed to indemnify Chevron, Chevron has not sought to enforce the indemnification clause. Thus, like in *Fontenot*, no indemnification clause comes into play. Moreover, in both cases, because a settlement was reached with Chevron, Chevron had not even been adjudicated at fault. *Id.;* but see *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515, 518 (5th Cir.1988)(holding that because of the settlement, there was no judicial finding that the indemnitee was "free from fault and thus outside the scope of the Act"). Thus, invalidating the waiver of subrogation involved here in no way

---

**4.** Fontenot also settled with a third defendant, but for the sake of simplicity, the Court will only consider the opinion as it regards the Chevron settlement.

advances the purposes of LOAIA. Although *Fontenot* only discusses the insurer's waiver of subrogation, there is no reason why its core logic cannot apply equally to an insured contractor's waiver as well. Thus, based on the reasons given in *Fontenot*, the Court concludes that Sonoco's waiver of subrogation does not violate LOAIA, and hence would be enforceable under Louisiana law. Consequently, under Louisiana law, Eagle's dependant waiver of subrogation would apply, and the Court must next determine if this waiver would likewise be enforceable—though given *Fontenot*, the answer is easy.

### B. Eagle's Waiver of Subrogation

■ A compensation carrier's waiver of subrogation is the precise issue decided in *Fontenot*. Thus, for the reasons enumerated in the decision, the Court finds that Eagle's waiver of subrogation is enforceable under Louisiana law. Thus, as LOAIA is the only basis on which Eagle attacks the waiver, the Court finds that Eagle has not demonstrated that the waiver is unenforceable. In addition, *Fontenot* discusses, in dicta, additional factors relevant only in the context of an insurer's waiver which are worth mentioning. The Court in *Fontenot* notes that in negotiating the waiver of subrogation, Hercules had provided a collateral source and hence a double recovery for Fontenot. *Id.* at 566. The Court countenances this windfall in part because Aetna had agreed to the waiver and had indeed been paid a higher premium as a result. *Id; see also Allen*, 510 F.2d at 982 (noting that when a right

to subrogation is waived, the insurer has "no standing to protest the Plaintiff's possible double recovery"). The opposite result would allow the insurance company to pocket the higher premium for nothing.

Unlike the Eagle–Sonoco agreement, however, the Aetna–Hercules contract explicitly stated that Hercules would pay a higher premium in exchange for the waiver of subrogation. *Id.* at 559. Although it is not clear here to what extent Eagle was paid a higher premium to waive its right to subrogation, it presumably was or at least could have been. In this regard, Eagle makes the argument that it charged the premium with the understanding that not all of Sonoco's waivers would be enforceable. Eagle's argument appears to be, in essence, that because it did not expect this waiver to be enforceable, the fact that it received a higher premium is irrelevant. The higher premium was meant to compensate for other, enforceable waivers. The enforceability of the waiver, however, is the precise issue before the Court. Eagle cannot metaphysically allocate its additional premium to other contracts before the validity of the agreement has been determined. Moreover, given the similarity of the this case with *Fontenot*, Eagle had no reasonable basis for expecting that either waiver would be invalid.[5]

In any event, the payment of the higher premium is not essential to the Louisiana Supreme Court's holding. Aetna, like Eagle, did not face "the historical inequality in bargaining power between oil companies and oilfield workers which Louisiana's Anti–Indemnity Act sought to rectify."

---

5. Plaintiff's argument regarding the payment of a higher premium is double-edged. By admitting that Sonoco was forced to pay a higher premium, Plaintiff is hard pressed to argue that Sonoco, the contractor LOAIA was meant to protect, did not suffer some economic harm as a result of the supposed adhesionary contract with Chevron. Nevertheless, for the reasons stated earlier, this is not the type of economic harm that LOAIA was meant to prevent. Only when the waiver of subrogation is used to circumvent the Act, the purpose of which is, as its name suggests, to prevent *indemnity*, not subrogation, is the waiver of subrogation invalid.

*Id.* Aetna voluntarily agreed to waive its right to subrogation and was held to its promise. Similarly, Eagle bound itself to respect the valid waiver of subrogation, and the same result should obtain.

Eagle attempts to distinguish *Fontenot*, but its distinctions reflect either a misreading of the opinion or simple disagreement with it. First, Eagle argues that *Fontenot* did not announce a blanket rule but rather merely defined a burden of proof "challenging Eagle to meet the burden that Eagle failed to meet." The text of *Fontenot*, however, does not support Eagle's reading. No discussion of "burden of proof" or "lack of evidence" exists in the opinion. Instead, the Louisiana Supreme Court analyzed general principles and fashioned a rule based mainly on the language of the statute and the logic of the positions taken. Eagle in fact criticizes the Louisiana Court in its brief for relying on a law review article to reach its decision, rather than evidence. Moreover, Eagle has not provided any evidence that would distinguish this case in any meaningful way from *Fontenot*. Eagle's novel evidence consists of (1) evidence that the Sonoco–Chevron contract was a contract of adhesion and (2) that the waiver of subrogation would force Sonoco to bear an insurance loss. Without passing on the weight of such evidence, the Court notes that it is simply irrelevant. The Court in *Fontenot* did not rest its decision on a failure to show a contract of adhesion or a failure to demonstrate an insurance loss for the insured contractor. Indeed, the existence of these two factors is presupposed in its discussion. Eagle is simply attempting to challenge the unambiguous holding of *Fontenot* on the basis of facts which were before the *Fontenot* Court.

Next, Eagle argues that Chevron had in fact sought to enforce an indemnity agreement provision and that by holding the waiver of subrogation to be enforceable, Sonoco would face renewed litigation on the matter. Defendant's argument is incorrect. By holding that the waivers of subrogation are enforceable, the Court makes no ruling on the enforceability of the indemnity agreement. The indemnity agreement may well be unenforceable regardless of the fact that the waivers of subrogation are enforceable.

■ Finally, Eagle argues that the fact that it may have received a higher premium is immaterial. It notes that the Louisiana Court only addressed the issue in dicta. Further, Eagle openly questions the Louisiana Court's analysis, pointedly asking, "where in the statute does it make an insurance protection adhesion contract enforceable if the employer's insurer charged a premium?" As stated above, the Court recognizes that the issue of paying a higher premium is dicta in the Louisiana Supreme Court's decision. Nevertheless, the fact that a higher premium was charged or could have been charged militates against the perception that Plaintiff is somehow unfairly obtaining a double recovery.

■ In short, Eagle has completely failed to distinguish *Fontenot* on its facts. The Court, if it were to adopt Louisiana law as surrogate federal law under OCS-LA is not technically bound by the decisions of Louisiana's highest court as it would be in an *Erie* posture. *See Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1129 (5th Cir.1986) (noting that under OCSLA, a federal court sits as *Lands Act* Court, not an *Erie* Court, and hence has more discretion with regard to interpreting state law than an *Erie* Court); *Ferguson v. Stingray Pipeline Co.*, 672 F.Supp. 944, 946 (W.D.La.1987). Nevertheless, it loath not follow this precedent, which is squarely on point. Moreover, the Court is convinced by the logic of *Fontenot*.

## C. Lack of Notice and Consent

Finally, although Eagle has not made a specific argument regarding its lack of notice and consent to Plaintiff's third-party settlement, the Court addresses the issue on its own initiative. The fact that Plaintiff, here, settled his claims against Chevron without notice or consent to Eagle is of no moment. Although the default rule is that the insurance carrier must consent in writing to any settlement that Plaintiff reaches with a third-party, see 33 U.S.C. § 933(g)(1),(2), the need for such consent is obviated if the carrier has waived its right to subrogation. If a defendant would not be entitled to subrogation, the terms and conditions of a plaintiff's settlement with a third-party make no difference to it. The only exception to this occurs with regard to future benefits. With respect to future benefits to be paid, the insurance carrier is entitled to a set-off, as opposed to a right of subrogation. As the waiver of subrogation has no effect on the right of set-off, a defendant still has an interest in the terms of Plaintiff's settlement in so far as future benefits are involved. Hence, for this reason, the Fifth Circuit has held on repeated occasions that even with a waiver of subrogation, a plaintiff's right to *future* benefits is terminated if it settles its claim against a third-party without the consent of the insurance carrier. *Jackson v. Land & Offshore Serv. Inc.*, 855 F.2d 244, 246 (5th Cir.1988); *Petroleum Helicopters, Inc. v. Collier*, 784 F.2d 644, 645 (5th Cir.1986). Future benefits, however, are not at issue in this case. As a result, perhaps, Eagle has not raised the lack of notice and consent as an argument for allowing it to enforce a lien.

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is no genuine issue of material and that for the reasons given in *Fontenot*, Plaintiff is entitled to judgment as a matter of law. Thus the Court **GRANTS** Plaintiff's Motion for Summary Judgment. Consequently, Defendant's competing Motion for Summary Judgment is **DENIED**. Each party is to bear its own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued this date, Plaintiff's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Plaintiff. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**